807 So.2d 1058 (2002)
AON RISK SERVICES OF LOUISIANA, INC.
v.
Edward J. RYAN, Jr., Individually and d/b/a Marine Insurance Services, Inc., Paul P. Fernandez, Jr.
No. 2001-CA-0614.
Court of Appeal of Louisiana, Fourth Circuit.
January 23, 2002.
*1059 David W. O'Quinn, Irwin, Fritchie, Urquhart & Moore LLC, New Orleans, LA, Counsel for Plaintiff/Appellant.
William J. Wegmann, Jr., Orr Adams, Jr., Denisse Y. Parrales, Law Firm of William J. Wegmann, L.L.C., Metairie, LA, Counsel for Defendant/Appellee.
Court composed of Chief Judge WILLIAM H. BYRNES III, Judge DENNIS R. BAGNERIS, SR., and Judge TERRI F. LOVE.
WILLIAM H. BYRNES III, Chief Judge.
Plaintiff-appellant, Aon Risk Services, Inc. of Louisiana (hereinafter referred to as "ARS"), appeals the January 3, 2001, denial of ARS's Motion for Preliminary Injunction. We affirm.
Pertinent to this litigation is LSA-R.S. 23:921 which declares non-compete agreements "null and void" unless they fit certain limited and specifically described exceptions. LSA-23:921 dictates that such agreements must designate "a specified parish or parishes, or municipality or municipalities, or parts thereof" where the agreement is to be effective, and those parishes and municipalities are further limited to those areas where the party seeking to enforce the non-compete agreement carries on a like business within the specified parish(es) or municipality(ies).
ARS states that it is attempting to enforce non-solicitation (non-compete) agreements between it and the defendants-appellants, Edward J. Ryan, Jr. and Paul P. Fernandez, Jr. Ryan entered into *1060 an Employment Agreement with Frank B. Hall & Co. dated January 31, 1990. ARS contends that it is the successor in interest to Frank B. Hall & Co. and as such has the right to enforce the non-compete clause of the Employment Agreement. The Employment Agreement stipulates that it is for a term "beginning on January 31, 1990 and ending on January 30, 1995 unless renewed or terminated under Section 3." Said Section 3(a) provides in pertinent part that:

Renewal. This Agreement may be renewed upon (i) the issuance by the [Frank B. Hall & Co.] of a Notice of Renewal to [Ryan] at least 30 days prior to the end date of the Term of Employment and (ii) the written acceptance of this Notice of Renewal by the Employee.
Ryan contends that neither Frank B. Hall & Co., nor any successor in interest ever sent him a Notice of Renewal as required by the above quoted language. ARS does not contend otherwise. Ryan also contends that he never sent a written acceptance of a Notice of Renewal to Frank B. Hall & Co. or any successor in interest as required by the above quoted language. The "Covenant Not to Compete" found in Section 4(d) of the Employment Agreement expires by its own terms "two (2) years after the Term of this Agreement." On the face of the record, the Employment Agreement with Ryan expired on January 30, 1995. ARS has failed to show that it was extended or renewed. Accordingly, we find no error in the trial court's refusal to grant the preliminary injunction as to Ryan based on the Employment Agreement.
The Employment Agreement was executed in connection with a Stock Purchase Agreement, also dated January 31, 1990, which also contains a non-compete clause. The Stock Purchase Agreement provides for the purchase by Frank B. Hall & Co. and sale by Ryan of all of the stock in Marine Insurance Service, Inc. LSA-R.S. 23:921 B dictates that a non-compete agreement shall have a term "not to exceed a period of two years from the date of the sale." Thus the non-compete agreement contained in the Stock Purchase Agreement expired by law in 1992, long before the time relevant to this litigation.
The non-competition agreement executed by Fernandez, unlike that executed by Ryan, does not have a termination date. It is designed to be effective throughout Fernandez's period of employment and for two years thereafter. The geographic scope of the agreement is described to be "whatever parishes, counties and municipalities the Company or Hall carries on such parish, county or municipality" in which Frank B. Hall & Co. conducted business. Defendants contend that this description is over broad and fails to comply with the language of LSA-R.S. 23:921 requiring that the parishes or municipalities be specified. Citing Petroleum Helicopters, Inc. v. Untereker, 98-1816 (La.App. 3 Cir. 3/31/99), 731 So.2d 965, the plaintiff argues that the reference in the agreement to "whatever parishes, counties or municipalities" is specific enough because the defendants know which parishes and municipalities are referred to. In Petroleum Helicopters the Third Circuit reasoned that the defendant employee "would surely be aware of the parishes in which [plaintiff] conducts its business." We beg to differ with the reasoning of our learned brothers of the Third Circuit. We find that the clear language of LSA-R.S. 23:921 requires that the agreement specify the parishes, etc., and that the employer must do business in those parishes. If this Court were to adopt the position espoused by the plaintiff, there would have been no reason for the legislature to have included the requirement that the parishes be specified. *1061 It would have been sufficient for the legislature to have simply stated that the parties could enter into a non-compete agreement referring to "those parishes in which the employer does business" in general terms only, without naming or listing those parishes. We are required to give effect to the word "specified" where to do so would not lead to absurd consequences.
Non-compete agreements are deemed to be against public policy, except to the limited circumstances delineated by statute. LaFourche Speech & Language Services, Inc. v. Juckett, 94-1809 (La.App. 1 Cir. 3/3/95), 652 So.2d 679; writ denied by, 95-0850 (La.5/12/95), 654 So.2d 351. Under Louisiana law, a covenant not to compete is disfavored, as it may function to deprive a person of his livelihood. Sentilles Optical Services, Div. Of Senasco, Inc. v. Phillips, 26,594 (La.App. 2 Cir. 3/1/95), 651 So.2d 395. Statutory exceptions to the public policy against anticompetition agreements are tightly drawn and should be narrowly construed in keeping with underlying policy of prohibiting restraint of free competition. First Page Operating Under the Name and Corporate Entity, Groome Enterprises, Inc. v. Network Paging Corp., 628 So.2d 130 (La.App. 4 Cir. 11/30/93), writ denied by 93-3193 (La.2/11/94), 634 So.2d 379. In AMCOM of Louisiana, Inc. v. Battson, 28,171 (La. App. 2 Cir. 1/5/96), 666 So.2d 1227, reversed 96-0319 (La.3/29/96), 670 So.2d 1223, the Louisiana Supreme Court reversed the judgment of the appellate court which had held that a non-compete agreement that had language describing as its geographic scope, "Shreveport or Bossier City, Louisiana, or in Caddo or Bossier Parishes, Louisiana, or within a seventy-five (75) mile radius of Shreveport or Bossier City, Louisiana," did not comply with the language of LSA-R.S. 23:921 calling for "specified" parishes, etc. The non-compete agreement in AMCOM also had a severability clause. The trial court severed and removed the language referring to the seventy-five mile radius, but maintained the agreement insofar as it specified specific parishes and municipalities. In reversing the appellate court, the Supreme court reinstated this judgment of the trial court. The Third Circuit in Petroleum Helicopters adopted a standard allowing a geographical area to be described in broad general terms from which the specific areas called for in the statute would be identifiable (but not identified) or inferred, as opposed to specified as called for in LSA-R.S. 23:921. Following this reasoning the parishes or municipalities or parts thereof encompassed by the seventy-five mile radius description in AMCOM would be even more objectively identifiable than the reference in the agreement in the instant case to "whatever parishes, counties or municipalities," but the Supreme Court rejected the seventy-five mile radius language and only upheld the agreement as it applied to parishes and municipalities designated by name in the agreement, i.e., specified. A fortiori, applying the AMCOM reasoning to the instant case, we find that the non-compete clause to be insufficiently specific; or, to quote from and follow Turner Professional Services, Ltd. v. Broussard, 99-2838, p. 4 (La.App. 1 Cir. 5/12/00), 762 So.2d 184, 186 writ denied XXXX-XXXX (La.9/29/00), 770 So.2d 356: "In our opinion, Petroleum Helicopters goes too far, and we decline to follow it."[1]
*1062 There are a number of reasons consistent with the policy disfavoring such agreements why we believe that the legislature intended to require that the employer be required to do more than just make a general reference to parishes and municipalities in which it did business. It avoids putting the employee, who may be presumed more often than not to be at a financial disadvantage relative to his employer to the further disadvantage of having to engage in expensive litigation in order to determine what the precise geographic limits of the agreement are. We believe that the legislature intended that the employee know on the front end what his potential restrictions might be and exactly what price he was being called upon to pay in exchange for employment. By specifying the parishes, etc. and requiring that the employer be doing business in them, the employee is not later caught in a position where he finds that he has given up much more than he bargained should his employer greatly expand the geographic range of his business after the agreement is executed. In that regard, the interpretation called for by the plaintiff in the instant case is merely an invitation to litigation. If we were to adopt plaintiff's reasoning why would any employer adopt any language other than language covering "any parish, municipality or parts thereof where the employer does business." That this is an absurd interpretation may be seen by the fact that it is really no different from saying "anywhere the employer does business," when the purpose of the statute is obviously to require the designation of some meaningful geographic limits. But the absurdity of the plaintiff's logic does not end here. If it had been the intention of the legislature to permit such generalized geographic descriptions, there would be no need to make any reference to the geographic boundaries at all. Had that been the intent of the legislature, it would have simply said that such agreements apply to those areas where the employer does business and there would be no need for the parties to even mention geographic areas, as such boundaries could be read into the agreement by virtue of the statute. In other words, had the legislature intended that the only requirement in such agreements be that they be limited to areas where the employer does business, that objective could be more easily accomplished legislatively than by contract, and there would be no need for any contractual language at all. For to say, as the agreement in Petroleum Helicopters did, that the agreement is effective in "parishes where the [employer] carries on a like business" is tantamount to saying "to the fullest extent allowed by law" and certainly no more informative, descriptive or specific. No reasonable reading of the statute suggests that the legislature intended that the language of such agreements be satisfied by some general, catchall phrase. The reasoning of Petroleum Helicopters leaves unanswered why the legislature would require that the agreement itself incorporate the requirements of the statute when that could be done by operation of law and further leaves unanswered why the legislature used the word "specified" if a catch-all phrase were intended.
Accordingly, we find that the non-compete agreement with Fernandez is unenforceable. Moreover, the non-compete agreement found in the employment agreement with Ryan is also unenforceable for the same reasons, in addition to the fact that it terminated by its own terms as explained earlier in this opinion.
For the foregoing reasons, the judgment of the trial court is affirmed.
AFFIRMED.
NOTES
[1] The reader should also be aware that Kimball, M.D. v. Anesthesia Specialists of Baton Rouge, Inc., XXXX-XXXX (La.App. 1 Cir. 9/28/01), 809 So.2d 405, may be released for publication in the near future. Although it has not been released for publication at the time of this writing and, therefore, may not be considered at the time of the writing of this opinion, the reader is advised to check for its release as its reasoning is most relevant to this case.