865 So.2d 183 (2003)
HOSE SPECIALTY & SUPPLY MANAGEMENT CO., INC.
v.
Steve GUCCIONE.
No. 03-CA-823.
Court of Appeal of Louisiana, Fifth Circuit.
December 30, 2003.
*185 William H. Daume, Terrytown, LA, for Defendant-Appellant, Steve Guccione.
Denise L. Martin, Degan, Blanchard & Nash, New Orleans, LA, for Plaintiff-Appellee, Hose Specialty & Management Co., Inc.
Panel composed of Judges THOMAS F. DALEY, SUSAN M. CHEHARDY and WALTER J. ROTHSCHILD.
SUSAN M. CHEHARDY, Judge.
This is a suit by an employer for an injunction to enforce nondisclosure and noncompetition clauses contained in an employment contract. The former employee appeals an adverse judgment that enjoins him from performing or participating in various acts that would compete with Hose Specialty's business. We vacate in part, affirm in part, and remand.
Hose Specialty & Supply Management Company, Inc. (formerly Hose Specialty & Supply, Inc.) filed suit against Steve Guccione on April 24, 2003, seeking injunctive relief prohibiting Guccione from "disclosing the confidential and proprietary customer and pricing lists of Hose Specialty to any person, firm, corporation, or association, from soliciting Hose Specialty's customers, and/or from using Hose Specialty's confidential pricing lists in connection with his employment." The petition made the following allegations:
Hose Specialty is in the business of supplying industrial hose to its customers. Its specialized customer list is confidential and is crucial to its business. Guccione was employed by Hose Specialty for approximately six years at its corporate offices in Belle Chasse, Louisiana. His duties included contacting customers on Hose Specialty's customer list and selling Hose Specialty's products to the customers.
In connection with his employment Guccione entered into an Employment Agreement, in which he acknowledged that Hose Specialty's customer list was a valuable proprietary asset, he agreed not to disclose the customer list to any person, firm, corporation or association, and he agreed not to solicit any customers of Hose Specialty within all 64 parishes in Louisiana, as well as certain counties in Mississippi and Alabama, for one year from his termination of employment.
On or about April 14, 2003 Guccione left Hose Specialty's employ. Hose Specialty alleged that after his departure Guccione used Hose Specialty's proprietary customer list and pricing list to solicit business from Hose Specialty's customers, in violation of the employment agreement.
*186 Hose Specialty asserted it would suffer immediate and irreparable injury if Guccione were allowed to use the confidential proprietary information to compete with Hose Specialty. Hose Specialty sought a temporary restraining order and injunctive relief against Guccione to enjoin him from using the confidential information.
The court issued a temporary restraining order and set a hearing for May 8, 2003, at which the only witnesses were the president of Hose Specialty and the defendant.

TESTIMONY
James E. Strickland testified he is president of Hose Specialty & Supply, which he described as a hose distributorship mainly servicing the oil-service sector of the oil industry. It sells hoses to oil companies, oil service companies and supply companies. Strickland said that over the 23 years Hose Specialty has been in business, the company has developed a customer list through personal contact with outside and inside salespeople, who develop relationships from working individually with particular customers and servicing the clients. Strickland said the customer list is ever-changing and is developed through sales to customers or personal contact by outside salespeople.
Strickland testified that the list is confidential and it is maintained in the database of the company's main computer system and in the laptop computer system of every salesperson. Each salesperson's computer has a list of the customers that salesperson is in charge of servicing. The salespeople make daily entries on a sales management database through the laptop system. The laptops are the property of Hose Specialty. When a salesperson leaves, the laptop computer remains in Hose Specialty's possession.
Strickland testified further that his salespeople, as a condition of their employment, enter into an employment agreement that contains a customer confidentiality agreement. When the company hires new salespeople, they are provided with a customer list, which consists of a base of customers on whom they call on a daily, weekly or monthly basis, depending on the customer's requirements. The salespeople also are responsible for developing additional customers. Commission reports are generated from the customer list in the computer system and the commissions from those sales are part of the salespeople's compensation.
According to Strickland, Steve Guccione began employment with Hose Specialty in early 1997. He was required to sign an employment agreement and he was provided with a list of already-established customers to whom he was required to provide service. Strickland said Guccione was not fired, but quit the company without telling Strickland why he was leaving. Strickland said that although Guccione gave the company two weeks notice, Guccione was paid two weeks' vacation pay in lieu of remaining for the notice period. Strickland stated, "It's not prudent to have an outside salesperson that's going to be leaving to be calling on your customers for the next two weeks. It just doesn't make good business sense."
Strickland testified further that after his departure, Guccione contacted Hose Specialty customers to solicit business from them. Strickland learned of it when customers contacted the company's inside salespeople to inform them Guccione had been soliciting their business and telling them he could undercut the prices offered by Hose Specialty.
According to Strickland, if Guccione continues to solicit business from Hose Specialty's *187 customers, the company would incur monetary damage, although it would be "hard to put a figure on it as it progresses in time." Strickland estimated there were as many as 40 customers on Guccione's particular list. He said it was too soon to know whether Hose Specialty had lost any business to Guccione, but there was the potential to lose quite a bit of business.
Strickland testified there are probably eight companies in the Greater New Orleans area or in Southeast Louisiana that sell hose in direct competition with his company. To his knowledge, no one has the customer list "exactly the way that Hose Specialty has developed it." He admitted, however, a competitor could have a list 98% similar to Hose Specialty's because "you could probably fabricate a list by going, taking a ride down Peters Road or whatever. It's the relationships that we protect through the Employment Agreement...." He said the list is exclusive because the company paid to develop the relationships between the outside salesperson and the individuals within those companies.
With regard to the price list, Strickland stated that Guccione had delivered many quotes to many customers. He admitted that at Hose Specialty the inside sales people provide the price quotations to the outside salespeople; the outside salesperson has nothing to do with the pricing, but simply informs the customer of the price quoted by the inside salesperson. He said that Guccione had access to all the pricing provided to his customers. Strickland admitted there is no single "price list," stating, "We have 18,000 items. I'm sure he'd have to go on the computer system to know what every item cost." He said the pricing information is contained within the company's internal computer network and is not available to the public.
Strickland also admitted that Guccione had to sign the Employment Agreement as a condition of his employment and that Guccione had no input on the actual terms of the contract.
Steve Guccione testified that while he was at Hose Specialty, he was never given a customer list, but rather was given assigned accounts and told to call on them. He admitted, however, he had a listing of customers to whom he was assigned. He denied that he had solicited Hose Specialty's customers since leaving its employ. He testified that since going to work for Taylor Industries, he was soliciting customers from a list provided by the new company.
Guccione admitted he had called on some of the same individuals or entities on whom he called for Hose Specialty. He denied that he was calling on all the same customers as he had at Hose Specialty and said some were not on his list from Hose Specialty. He admitted, however, that he was calling on Hose Specialty customers even though he had agreed not to.
Guccione stated, "[I]t's open territory. Everyone goes after the same customers. All the hose companies in the industry goes [sic] after the same customers." Guccione also testified that in excess of 15-20 companies in this area sell hydraulic hose, including "major players like Taylor's and Hose Specialty." He said he knows of no company that buys hose only from Hose Specialty.
Guccione said that every time he asked for a list at Hose Specialty, he was told it could not be printed. He was told what accounts to call on. There was a sales meeting every Monday morning; they were assigned certain accounts, plus they cold-called people in certain territories. He had a notebook in which he jotted down whom he saw. He said he returned *188 all that to the sales manager on his last day at Hose Specialty. Guccione said he saw 50 to 100 accounts on a rotating basis. Some of them were "cold calls"; not all of them bought hoses from him.
Guccione said he had no access to the main computer at Hose Specialty, which contained the pricing information. When he needed a price he had to contact the inside sales people, who would give the prices for particular products to him. Guccione denied that he knew prices for any particular pieces of equipment or hose that he sold. Further, Guccione said, the laptop computers provided to the salespeople by Hose Specialty were specially altered so that no printing could be done from the laptop. He also said he had no idea how to price products for the company; they never showed him how to do a quote, how to price out anything, or what profit margins to use.
Guccione denied he had ever revealed to anyone else the names of his customers at Hose Specialty. He specifically denied ever giving Taylor any information regarding his Hose Specialty contacts. He reiterated that every customer on whom he has called was on the list given him by Taylor. He said he was given a list of 150-200 customers by Taylor. His territory for Hose Specialty was the West Bank, East Bank and Venice. His territory for Taylor is Harvey, Houma and Venice. Taylor has branches in Morgan City, Lafayette, Venice, Harvey, and Golden Meadow. Hose Specialty has six or seven locations in Louisiana and Houston.
Guccione testified there are other employees who left Hose Specialty and have gone to work for its competitors. He listed several names of former Hose Specialty personnel and said they also had signed employment agreements, but that he has never heard of the company suing them for enforcement of the agreement. He admitted that some of the customers on Taylor's list were also customers of Hose Specialty and that he had sold to them anyway.
The Employment Agreement contains the following relevant passages:
Agreement Dated January 2, 1997, between Hose Specialty and Supply Co., Inc. ("Employer") and Steven P. Guccione ("Employee")
* * *
11.) Disclosure Information. Employee acknowledges that the list of the employer's customers as it may exist from time to time is a valuable, special, and unique asset of the employer's business. Employee will not, during or after the term of his employment, disclose the list of Employer's customers or any part thereof to any person, firm, corporation, association, or [sic] any reason or purpose whatsoever. In the event of a breach or threatened breach by Employee of the provisions of this paragraph, Employer shall be entitled to an injunction restraining Employee from disclosing, in whole or in part, the list of Employer's customers, or from rendering any services to any person, firm, corporation, association, or other entity to whom such list, in whole or in part, has been disclosed or is threatened to be disclosed....
* * *
14.) Restrictive Covenant. For a period of one year after the termination of this Agreement, no matter which party terminates this Agreement, whether for cause or without cause i.e., for a period of one year after employment Employer terminates for any reason, Employee shall not, within all sixty-four (64) parishes of the state of Louisiana, within the following counties of the State of *189 Mississippi: Wilkinson, Amite, Pike, Walthall, Marion, Lamar, Forrest, Perry, Greene, George Stone, Pearl River, Hancock, Harrison and Jackson; and within the following counties of the State of Alabama: Baldwin and Mobile; directly or indirectly, own, manage, operate, control, be employed by, participate in, or be connected in any manner with the ownership, management, operation, or control of any business similar to the type of business conducted by Employer at the time of the termination of this Agreement, so long as Employer or its successors or assigns carry on a like business therein. Additionally, Employee shall not solicit customers of Employer within all sixty-four (64) parishes of the State of Louisiana and within the above-specified counties of the States of Mississippi and Alabama.

ACTION OF DISTRICT COURT
Ruling from the bench, the court rendered judgment in favor of Hose Specialty, followed by a written judgment dated May 12, 2003. In oral reasons for judgment the court stated:
When Mr. Guccione went to work for Hose Specialty on January 2, 1997 he signed an Employment Agreement, which he has acknowledged today. Tommy Tillis, who was his supervisor, signed for Hose Specialty & Supply Company, Inc. There has been no testimony today that Mr. Guccione did not understand what he was signing. On the contrary, Mr. Guccione was very credible and forthcoming and honest in his testimony. And that reflects that he understood what he was signing. He understood the nature of Hose Specialty's business. And he admitted that the Taylor company business, for whom he is working at this point, is in essential part the same kind of business as Hose Specialty is.
At paragraph 11 of the contract, entitled "Disclosure Information," Mr. Guccione by signing agreed and acknowledged "that the list of Employer's customers as it may exist from time to time"and that would be Hose Specialty's customers"is a valuable, special, and unique asset of Employer's business." Mr. Guccione signed, agreeing further at paragraph 11: "Employee will not, during or after the term of his employment, disclose the list of Employer's customers or"and this next phrase ... or clause is important"or any part thereof to any person, firm, corporation, association, or any reason or purpose whatsoever.
* * *
Even more pertinent to today's proceeding, at paragraph 14 of the contract signed by Mr. Guccione, entitled "Restrictive Covenant." ...
The contract is clear and unequivocal.
Mr. Guccione is enjoined and restrained for a one-year period from the date he left the employ of Hose Specialty, which was on April 14, 2003, from specifically being employed by or in any way connected with the Taylor's Company, by whom he is currently employed, or any other company which carries on any business similar to the type of business conducted by Hose Specialty and Supply Management Company, Inc. Further, he is enjoined from soliciting customers within all sixty-four parishes of the State of Louisiana, or the Parishes [sic] of Mississippi and Alabama specified in the contract. And that would be from soliciting any customers of Hose Specialty Management Company, Inc. Furthermore, he is enjoined and restrained from disclosing the customer list of Hose Specialty Supply Management *190 Company, Inc., or any part thereof at any time, within a period as required by law. And I believe the limits in the case law areI believe the case law at an outer limit speaks in terms of five years.
Mr. Guccione is enjoined and prohibited from disclosing ... the customer list and the pricing list, or use [sic] confidential proprietary customer information, as he agreed to in his contract with Hose Specialty. He is restrained and enjoined from soliciting customers on Hose Specialty [sic] customer list, from contacting current customers, from entering the premises owned or occupied by Hose Specialty. He is enjoined for one year of being involved in the business in any like business whatsoever. So he should not need to contact Hose Specialty to find out if anybody is on their customer list, because he has agreed not to be in the business for a year.
The written judgment restrained and enjoined Guccione for a period of one year from the date he left the employ of Hose Specialty & Supply Management Company, Inc. on April 14, 2003 from the following:
1. Directly or indirectly, owning, managing, operating, controlling, being employed by, participating in, or being connected in any manner with the ownership, management, operation, or control of Taylor Industries and/or any business similar to the type of business conducted by Hose Specialty & Supply Management Company, Inc., within all sixty-four (64) parishes of the State of Louisiana, within the counties of Wilkinson, Amite, Pike, Walthall, Marion, Lamar, Forrest, Perry, Greene, George Stone, Pearl River, Hancock, Harrison and Jackson in the State of Mississippi, and within the counties of Baldwin and Mobile in the State of Alabama;
2. Soliciting customers of Hose Specialty & Supply Management Company, Inc., within all sixty-four (64) parishes of the State of Louisiana, within the ... counties of [same listing as in No. 1 above] in the State of Mississippi, and within the counties of Baldwin and Mobile in the State of Alabama.
The judgment further restrained and enjoined Guccione from
1. Disclosing the list of Hose Specialty & Supply Management Company, Inc.'s customers, pricing lists, confidential and/or proprietary information or any part thereof to any person, firm, corporation, or association;
2. Rendering services to any person, firm, corporation, association or other entity to whom the list of Hose Specialty & Supply Management, Inc.'s customers, pricing lists, confidential and/or proprietary information, in whole or in part, has been disclosed or threatened to be disclosed for the maximum time allowed by law.
On appeal Guccione contends the trial court committed reversible error in issuing injunctions based on the disclosure of the customer list, in issuing injunctive relief based on pricing or other proprietary information, and in enforcing the restrictive employment agreement.
Hose Specialty filed an answer to the appeal, seeking damages for frivolous appeal.
In his first assignment, Guccione argues the trial court erred in issuing injunctions based on disclosure of the customer list. He contends that plaintiff failed to prove there is an actual physical "customer list." Defendant points out that when questioned *191 on the list, James Strickland could not quantify how many customers there were and testified, "It's the relationships that we protect through the employment agreement.... The list is exclusive because the company paid to develop the relationship between the outside sales person and the individuals within the company."
Guccione asserts, further, that the court erred in enforcing the injunctive relief clause because the contract requires a breach or threatened breach of disclosure by Guccione. Guccione contends there was no testimony that could prove or even indicate that he disclosed the customer list to anyone. Strickland testified that Guccione had contacted customers who had done business with Hose Specialty, but Guccione testified he never disclosed a customer list to anyone and that he was given the names of certain customers by his new employer.
Guccione argues the contract contains no reference to pricing lists or other proprietary information. He assert that without a contractual basis for granting injunctive relief, Hose Specialty must rely upon the provisions of the Code of Civil Procedure, under which it had to prove irreparable injury in order to obtain an injunction. Defendant contends that plaintiff failed to establish it had suffered or would suffer any irreparable harm if injunctive relief were not issued.
Finally, Guccione contends the agreement is unenforceable because it is overbroad. He asserts there was no testimony defining the territory in which Hose Specialty does business and no testimony that Hose Specialty does business in the entire state of Louisiana as well as in the Mississippi counties designated in the agreement. The only testimony regarding territories concerned the territories assigned to defendant by his new employer.
Guccione asserts further that there is too little information for the court to reform the agreement in order to enforce it. He contends that although the statute's wording permits a contract restricting non-competition clauses to a parish or parishes, it says nothing about "county or counties," and hence cannot apply to the Mississippi and Alabama counties listed in the agreement.
In opposition, Hose Specialty asserts the trial court properly issued the injunction based upon the disclosure of Hose Specialty's customer list, properly issued the injunction against the disclosure and/or use of Hose Specialty's pricing list, that the restrictive covenant in the agreement is enforceable, and that Hose Specialty is entitled to damages for frivolous appeal.
Hose Specialty asserts that despite the fact that there was no printed, formal "customer list," Guccione acknowledged in signing the Employment Agreement that "the list of the employer's customers as it may exist from time to time is a valuable, special, and unique asset of the employer's business." In addition, Hose Specialty cites Guccione's own testimony that he had a "set" list of customers to whom he was assigned by Hose Specialty.
Hose Specialty points out that the purpose of the non-disclosure clause is "to protect Hose Specialty's relationships that have been established over the years," which its sales employees are paid to develop for the benefit of its business. Hose Specialty argues, "In signing the Employment Agreement, Guccione agreed to protect those relationships by refraining from disclosing its customer[s] to Hose Specialty's competitors."
Hose Specialty contends that the trial court correctly found that Guccione had breached the restrictive covenant by soliciting Hose Specialty's customers within one year of his termination of employment. *192 Guccione himself admitted that he intentionally solicited Hose Specialty's customers, although he was contractually bound not to do so.
Hose Specialty further contends that because the restrictive covenant restricts the non-competition prohibition both in time and geographical location, it is valid. Hose Specialty argues, "It is immaterial that the restrictive covenant and the Trial Court's judgment lists counties, as well as parishes. The provisions properly limit the non-competition agreement as required by statute."
Finally, in its answer to the appeal Hose Specialty seeks damages for frivolous appeal, asserting there is no substantial legal question for appeal in this case, that Hose Specialty presented sufficient evidence to support the trial court's finding that the employment agreement was enforceable, that Guccione breached and/or threatened to breach the clear terms of the agreement, and that an injunction was warranted.

LAW AND ANALYSIS
La.R.S. 23:921 governs noncompetition contracts. It provides, in pertinent part:
A. (1) Every contract or agreement, or provision thereof, by which anyone is restrained from exercising a lawful profession, trade, or business of any kind, except as provided in this Section, shall be null and void.
* * *
C. Any person, including a corporation and the individual shareholders of such corporation, who is employed as an agent, servant, or employee may agree with his employer to refrain from carrying on or engaging in a business similar to that of the employer and/or from soliciting customers of the employer within a specified parish or parishes, municipality or municipalities, or parts thereof, so long as the employer carries on a like business therein, not to exceed a period of two years from termination of employment. An independent contractor, whose work is performed pursuant to a written contract, may enter into an agreement to refrain from carrying on or engaging in a business similar to the business of the person with whom the independent contractor has contracted, on the same basis as if the independent contractor were an employee, for a period not to exceed two years from the date of the last work performed under the written contract.
* * *
G. Any agreement covered by Subsections B, C, D, E, or F of this Section shall be considered an obligation not to do, and failure to perform may entitle the obligee to recover damages for the loss sustained and the profit of which he has been deprived. In addition, upon proof of the obligor's failure to perform, and without the necessity of proving irreparable injury, a court of competent jurisdiction shall order injunctive relief enforcing the terms of the agreement.
The Louisiana Supreme Court's most recent pronouncement on the proper interpretation and application of La.R.S. 23:921 regarding noncompetition agreements is SWAT 24 Shreveport Bossier, Inc. v. Bond, 00-1695 (La.6/29/01), 808 So.2d 294. In SWAT 24 the court interpreted "the limited exception found in § 921(C) to the general nullity of such agreements to apply only to those agreements in which the employee agrees to refrain from carrying on or engaging in his own business similar to that of the employer" and found the agreement before it unenforceable because its language went beyond the limited exception. Id. at 296.
*193 La.R.S. 23:921(A)(1) expresses Louisiana's strong public policy disfavoring non-competition agreements between employers and employees. SWAT 24, 808 So.2d at 298. "Because such covenants are in derogation of the common right, they must be strictly construed against the party seeking their enforcement." Id.
The SWAT 24 court held that La. R.S. 23:921(C) only allows an agreement that prohibits an employee from leaving and beginning his own similar business in competition with his original employer:
The presumption arising from the legislature's deliberate change in the language, combined with the principle that we must strictly construe the exceptions to the longstanding public policy of this state disfavoring agreements not to compete, lead us to believe that the legislature intended that a noncompetition agreement restraining an employee from carrying on or engaging in his own business may be valid provided certain conditions are met. Conversely, an agreement that restrains an employee from carrying on or engaging in a competing business as the employee of another does not fall within the exception provided for by La. R.S. 23:921(C) and, instead, would be null and void pursuant to Subsection (A).
808 So.2d at 306.
Thus, an agreement cannot prohibit an employee from working for a similar business in competition with the original employer. "Louisiana's strong public policy restricting these types of agreements is based upon an underlying state desire to prevent an individual from contractually depriving himself of the ability to support himself and consequently becoming a public burden." SWAT 24, 808 So.2d at 298.[1]
Guccione in this case has not started his own business; rather, he went to work for a competing business as an employee. Accordingly, the trial court in this case erred in enjoining Guccione from "being employed by or in any way connected with the Taylor's Company ... or any other company which carries on any business similar to the type of business conducted by Hose Specialty and Supply Management Company, Inc." That portion of the judgment must be vacated.
On the other hand, "an employee whose noncompetition agreement comports with the requirements of La.R.S. 23:921(C) may be validly restricted from carrying on or engaging in his own competing business and from soliciting customers of the employer for his own competing business or the competing business of another." 808 So.2d at 307.
Here, as in the SWAT 24 case, the language of the Employment Agreement goes beyond the limited exception to the statutory ban on noncompetition agreements by prohibiting Guccione's employment in any capacity with any other business "similar *194 to the type of business" conducted by Hose Specialty. Therefore, the contractual language is overbroad and thus is null and void. See SWAT 24, 808 So.2d at 308.
Further, as pointed out by Guccione, the Employment Agreement prohibits disclosure of Hose Specialty's customer list, but it says nothing about a price list or other "confidential or proprietary information." The judgment went beyond the scope of the agreement by including "pricing lists, confidential and/or proprietary information" in the injunction. Consequently, that portion of the judgment that enjoins disclosure of "pricing lists, confidential and/or proprietary information" is vacated.
With respect to the geographic bounds of the agreement, Guccione argues that the provisions of the contract prohibiting him from soliciting customers in specified counties in Mississippi and Alabama are unenforceable. He cites the language of La.R.S. 23:921(C) regarding geographic limitations, which states, "Any person....may agree with his employer to refrain from ... soliciting customers of the employer within a specified parish or parishes, municipality or municipalities, or parts thereof ...." Guccione contends that the statute does not mention counties and, hence, a restrictive employment agreement cannot apply to counties as geographic entities.
As the supreme court stated in SWAT 24, "we must strictly construe the exceptions to the longstanding public policy of this state disfavoring agreements not to compete." 808 So.2d at 306. Public policy requires that the provisions of noncompetition agreements be strictly construed in favor of the employee, and the agreements must strictly comply with the requirements of the statute limiting the territorial scope of such contracts. Turner Professional Services, Ltd. v. Broussard, 99-2838 (La.App. 1 Cir. 5/12/00), 762 So.2d 184, writ denied 00-1717 (La.9/29/00), 770 So.2d 356.
We find there is no significant difference between "parish or parishes" as used in the statute and "county or counties," for both refer to the same type of geographic subdivision of a state. What is important is that the geographic limitation be express and clearly discernable. The agreement here satisfied that requirement by specifically listing the counties in Mississippi and Alabama to which the agreement applies. For this reason the geographic limitation is enforceable.
Further, we find the court did not err in enjoining disclosure of Hose Specialty's customer list. Hose Specialty sufficiently proved there was either a breach or a threatened breach of that provision. Strickland testified that customers of Hose Specialty had advised the company that Guccione had called on them and solicited their business for Taylor by offering to beat Hose Specialty's prices. Such action not only violates the non-solicitation clause of the agreement (which we find is enforceable), but also threatens a breach of Hose Specialty's confidential customer list.
We also affirm the language that prohibits Guccione from soliciting customers of Hose Specialty for a period of one year from the date of his termination. However, that clause applies broadly across Louisiana and includes counties in Mississippi and Alabama, and must surely include customers with whom Guccione had no contact when he worked for Hose Specialty. Without knowing who those customers are, he will be unable to determine whether customers of his new employer are also on the Hose Specialty list. Accordingly, we shall direct the trial court to issue a protective order, under which *195 Hose Specialty will be ordered to disclose to Guccione what customers he may not solicit, while Guccione will be ordered to maintain strict confidentiality of all such information.
In view of our conclusions here, we find no merit to Hose Specialty's claim for damages for frivolous appeal.

DECREE
For the foregoing reasons, we vacate the language of the judgment that enjoins the defendant, Steve Guccione, from being employed by the Taylor company or any other company which carries on any business similar to the type of business conducted by Hose Specialty and Supply Management Company, Inc.
We also vacate the language that prohibits Guccione from disclosing Hose Specialty & Supply Management Company, Inc.'s pricing lists, confidential and/or proprietary information.
In addition, we vacate the paragraph that prohibits Guccione from "rendering services to any person, firm, corporation, association or other entity to whom the list of Hose Specialty & Supply Management, Inc.'s pricing lists, confidential and/or proprietary information ....has been disclosed or threatened to be disclosed."
Finally, we remand and order the trial court to enter a protective order regarding disclosure to Guccione of what customers he is prohibited from soliciting, as discussed above.
In other respects the judgment is affirmed. Costs of this appeal are assessed equally against the parties.
VACATED IN PART, AFFIRMED IN PART, AND REMANDED WITH INSTRUCTIONS.
NOTES
[1] We acknowledge the legislature's recent amendment of La.R.S. 23:921 by Acts 2003, No. 428, § 1, which altered subsection (B) to include the phrase, "or other interested party in the transaction," and added new subsection (H), which provides, "For the purposes of Subsections B and C, a person who becomes employed by a competing business, regardless of whether or not that person is an owner or equity interest holder of that competing business, may be deemed to be carrying on or engaging in a business similar to that of the party having a contractual right to prevent that person from competing." Although that language appears to legislatively overrule the SWAT 24 case, we will not apply the new version of the statute retroactively to this case. Since it affects contract rights, it makes a substantive change in the law, and therefore should have prospective application only. See La.C.C. art. 6.