ENVIRONMENTAL SAFETY      \*      NO. 2019-CA-0813
HEALTH CONSULTING
SERVICES, INC.                    \*

                                        COURT OF APPEAL

VERSUS                           \*

                                        FOURTH CIRCUIT

JONATHAN FOWLER, ET AL.      \*

                                        STATE OF LOUISIANA

                      \* \* \* \* \* \* \*

APPEAL FROM
25TH JDC, PARISH OF PLAQUEMINES
NO. 65-226, DIVISION "B"
Honorable Michael D. Clement, Judge
\* \* \* \* \* \*
**Judge Dale N. Atkins**
\* \* \* \* \* \*
(Court composed of Chief Judge James F. McKay, III, Judge Paula A. Brown,
Judge Dale N. Atkins)

Philip A. Franco
Timothy M. Brinks
Jeffrey E. Richardson
ADAMS AND REESE LLP
701 Poydras Street
4500 One Shell Square
New Orleans, LA 70139-6534

     COUNSEL FOR PLAINTIFF/APPELLANT


Scott L. Sternberg
Michael Finkelstein
David LaCerte
M. Suzanne Montero
STERNBERG NACCARI & WHITE, LLC
935 Gravier Street, Suite 2020
New Orleans, LA 70112

     COUNSEL FOR DEFENDANT/APPELLEE

**REVERSED AND REMANDED**
**MARCH 11, 2020**

Appellant, Environmental Safety & Health Consulting Services, Inc. ("ESH"), appeals the trial court's denial of its petition for preliminary injunction, which it sought to enforce noncompetition agreements it executed with its former employees, Jonathan Fowler and Logan Jordan. For the reasons that follow, we reverse the trial court's judgment and remand for further proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND

ESH is a company that performs oil and hazardous materials spill containment and cleaning services throughout the state, including in Plaquemines Parish. Mr. Fowler and Mr. Jordan are both former employees of ESH. Mr. Fowler originally began work with ESH in 2013 and signed a noncompetition and non-solicitation agreement with ESH. He was hired as a spill response safety supervisor at ESH in February 2017. Although he began his work at ESH's site in Houma, Louisiana, Mr. Fowler was eventually promoted to the position of safety coordinator and transferred to ESH's location in LaPlace, Louisiana. In December 2018, he was again promoted to the position of site safety representative at the Alliance Phillips 66 ("P66") refinery in Plaquemines Parish.

Meanwhile, Mr. Jordan first became employed by ESH in 2016, and he also signed a noncompetition and non-solicitation agreement with ESH when he began working at ESH. Mr. Jordan left ESH for other employment in June 2018, but returned to work at ESH in December 2018, after first declining an offer of employment in September 2018. Mr. Jordan began working for ESH at the P66 refinery later in December 2018.

On December 10, 2018, both Mr. Jordan and Mr. Fowler each executed new noncompetition and non-solicitation agreements (the ''Agreements'') with ESH. The Agreements were substantively identical and provided: (1) that Mr. Jordan and Mr. Fowler desired and agreed to be legally bound by the Agreements; (2) that Mr. Jordan and Mr. Fowler would not carry on or engage in a similar business as that of ESH both during their employment and for two years after the termination of their employment with ESH; (3) that Mr. Jordan and Mr. Fowler would not lend or allow their name or reputation to be used in any business similar to that of ESH; and (4) that Mr. Jordan and Mr. Fowler would not allow their skills to be used in any other business similar to that of ESH. The Agreements defined ESH's business as follows:

> including any enterprise engaged in any sort of oil and hazardous materials spill containment and cleanup services, industrial cleaning services, waste transportation and disposal, NORM remediation, turnaround services, environmental consulting and training, or environmental product sales. It shall also be understood as including any enterprise engaged in any of the following additional activities: Emergency/Spill Management Team Member, technical plan writing for compliance with regulatory agencies (Minerals Management Services. Environmental Protection Agency. United States Coast Guard. Louisiana Department of Environmental Quality. (Emphasis in original).

2

The Agreements also listed a number of parishes in Louisiana, including Plaquemines Parish, and counties in Texas where the Agreements would be binding upon Mr. Fowler and Mr. Jordan. Finally, the Agreements provided that ESH would be entitled to injunctive relief without the necessity of proving irreparable harm in the event the Agreements were breached.

On April 8, 2019, both Mr. Jordan's and Mr. Fowler's employment with ESH ended. Around that time, ESH learned that it would not be awarded a long-term contract to continue working at the P66 refinery; instead, the contract had been awarded to Clean Harbors, a company that would perform the same work ESH had been performing at the P66 refinery. Both Mr. Fowler and Mr. Jordan took positions with Clean Harbors in April 2019.

On April 22, 2019, ESH filed a Petition for Specific Performance, Injunctive Relief, and Damages, naming Mr. Fowler and Mr. Jordan as defendants. In the petition, ESH alleged that Mr. Fowler and Mr. Jordan were both former employees of ESH who resigned their positions to work for ESH's competitor, Clean Harbors; that both Mr. Fowler and Mr. Jordan executed the Agreements during their employment with ESH; and that Mr. Fowler and Mr. Jordan violated the Agreements by going to work for Clean Harbors. ESH requested preliminary and permanent injunctive relief in the form of the court ordering Mr. Fowler and Mr. Jordan to cease working for Clean Harbors. ESH further requested specific performance of the Agreements and damages—including lost revenues and lost business opportunities—and attorney's fees.

Mr. Fowler and Mr. Jordan answered the petition, arguing that they were fraudulently induced into signing them based on misrepresentations that ESH had secured the long-term contract at the P66 refinery and the Agreements were, thus,

3

void for vices of consent. Alternatively, they argued that the Agreements were invalidly overbroad and vague and that they had not violated them.

Trial on the Petition for Preliminary Injunction commenced on May 9, 2019. At the conclusion of the hearing, the trial court took the matter under advisement. On May 17, 2019, the trial court rendered judgment denying ESH's petition for preliminary injunction. In its reasons for judgment, the trial court found that, even though the facts presented at trial established that Mr. Fowler and Mr. Jordan both executed the Agreements and violated them, ESH had not shown irreparable injury and was not entitled to relief. The trial court cited *West Carroll Health System, L.L.C. v. Tillman*, 47,152, pp. 18-17 (La. App. 2 Cir. 5/16/12), 92 So.3d 1131, 1141 (denying injunctive relief because the former employee's breach of the non-compete agreement with the employer was not shown to have had "competitive impact" and the employer did not "demonstrate any injury or potential injury" to the employer's business). The trial court found that ESH did not prove that Mr. Fowler and Mr. Jordan "harmed" ESH's business by going to work for Clean Harbors. The trial court further found that ESH did not prove that Mr. Fowler's and Mr. Jordan's employment at Clean Harbors was the reason the long-term contract at the P66 refinery was awarded to Clean Harbors and not ESH. Therefore, injunctive relief was denied.

This appeal followed.

## DISCUSSION

The dispositive issue of this appeal is whether the Agreements are enforceable against Mr. Fowler and Mr. Jordan and whether ESH has made a *prima facie* case showing it is entitled to preliminary injunctive relief.

4

At the outset, it must be noted that noncompetition agreements are not favored in Louisiana. "Louisiana's strong public policy restricting non-competition agreements is based upon an underlying state desire to prevent an individual from contractually depriving himself of the ability to support himself and, consequently, becoming a public burden." *Choice Prof'l Overnight Copy Serv., Inc. v. Galeas*, 2011-0034, p. 9 (La. App. 4 Cir. 5/25/11), 66 So.3d 1216, 1221 (citing *Clear Channel Broadcasting, Inc. v. Brown*, 2004-0133, p. 4 (La. App. 4 Cir. 3/30/05), 901 So.2d 553, 558).

To echo this policy, the Louisiana Legislature enacted La. R.S. 23:921[1], which declares that all noncompetition agreements are null, except when they meet certain exceptions, including: (1) a two-year maximum duration; (2) a specific list of the areas in which the former employee is restrained from competing with the employer's business; and (3) competition between the former employee and employer.

---

[1] La. R.S. 23:921 A.(1) Every contract or agreement, or provision thereof, by which anyone is restrained from exercising a lawful profession, trade, or business of any kind, except as provided in this Section, shall be null and void. However, every contract or agreement, or provision thereof, which meets the exceptions as provided in this Section, shall be enforceable.

\*\*\*

C. Any person, including a corporation and the individual shareholders of such corporation, who is employed as an agent, servant, or employee may agree with his employer to refrain from carrying on or engaging in a business similar to that of the employer and/or from soliciting customers of the employer within a specified parish or parishes, municipality or municipalities, or parts thereof, so long as the employer carries on a like business therein, not to exceed a period of two years from termination of employment. An independent contractor, whose work is performed pursuant to a written contract, may enter into an agreement to refrain from carrying on or engaging in a business similar to the business of the person with whom the independent contractor has contracted, on the same basis as if the independent contractor were an employee, for a period not to exceed two years from the date of the last work performed under the written contract.

D. For the purposes of Subsections B and C of this Section, a person who becomes employed by a competing business, regardless of whether or not that person is an owner or equity interest holder of that competing business, may be deemed to be carrying on or engaging in a business similar to that of the party having a contractual right to prevent that person from competing.

La. R.S. 23:921(H) allows for an employer to seek injunctive relief where there is a breach of a noncompetition agreement. Typically, in order to prevail on a petition for injunctive relief, a petitioner must show that irreparable injury, loss, or damage will result to them if the relief is not granted. La. C.C.P. art. 3601(A). La. R.S. 23:921, however, dispenses with this requirement and instead provides that "upon proof of the obligor's failure to perform, and **without the necessity of proving irreparable injury**, a court of competent jurisdiction **shall** order injunctive relief enforcing the terms of the agreement." La. R.S. 23:921(H) (Emphasis added). Though the court is mandated to issue an injunction upon proof that the obligor failed to perform under the agreement, the employer must still establish that it is entitled to relief. *Vartech Systems, Inc. v. Hayden*, 2005-2499, pp. 7-8 (La. App. 1 Cir. 12/20/06), 951 So.2d 247, 255.

Ordinarily, while a district court is given broad discretion in granting or denying a petition for preliminary injunction and those findings will not be disturbed by an appellate court in the absence of a clear abuse of discretion, that standard of review is applicable only when there is a finding that the trial court committed no error of law. *Forrester v. Bruno*, 2018-0648, p. 17 (La. App. 4 Cir. 5/1/19), ___ So.3d ___, ___, 2019 WL 1940341, *8.

We find that the trial court committed an error of law in requiring that ESH prove injury before granting the preliminary injunction. La. R.S. 23:921(H) explicitly removes the injury requirement in the context of noncompetition agreements in order for injunctive relief to be rendered. The statute mandates that the trial court shall issue the injunction when two conditions are met: (1) when the non-compete agreements are compliant with La. R.S. 23:921; and (2) when the employer has made a *prima facie* showing that it is entitled to relief. To require, as

6

part of the *prima facie* showing, that the employer prove injury, when the statute clearly states that is not required, is an error of law. Therefore, we will consider whether ESH is entitled to injunctive relief *de novo*. *See Rosell v. ESCO*, 549 So.2d 840, 844, n. 2 (La. 1989) ("[W]hen the court of appeal finds that a reversible error of law…was made in the trial court, it is required to redetermine the facts de novo from the entire record and render a judgment on the merits.")

ESH argues that it made a *prima facie* showing at the trial of the preliminary injunction that it is entitled to injunctive relief based on the evidence which showed there were valid Agreements with Mr. Jordan and Mr. Fowler that were breached. However, Mr. Jordan and Mr. Fowler argue that the Agreements are burdened by vices of consent and are, thus, not valid contracts. They further argue that, even if the Agreements are valid contracts, they are not enforceable under La. R.S. 23:921 because they are impermissibly overbroad and vague. We address each of these arguments in turn.

### *Vices of Consent*

We first consider whether the Agreements executed between ESH and Messrs. Fowler and Jordan are invalid and void due to vices of consent.

A party's consent to a contract "may be vitiated by error, fraud, or duress." La. C.C. art. 1948. Error can only vitiate consent when it concerns a cause without which the party would not have entered into the contract "and that cause was known or should have been known to the other party." La. C.C. art. 1949. Fraud is a misrepresentation or suppression of the truth made by one party to a contract with the intention for one party to gain an unjust advantage or to cause a loss or inconvenience to the other party. La. C.C. art. 1953. Fraud does not vitiate consent when the party who was defrauded "could have ascertained the truth without

7

difficulty, inconvenience, or special skill." La. C.C. art. 1954. Error that was caused by fraud does not need to concern the cause of the obligation in order to vitiate consent, "but it must concern a circumstance that has substantially influenced that consent." La. C.C. art. 1955. The burden of proof for an allegation of fraud is on the party who makes the allegation. *McClatchey v. Guar. Bank & Tr. Co.*, 85 So.2d 6, 8 (La. 1955). Fraud is never presumed and must be proven by a preponderance of the evidence. *Id.*; *Van Meter v. Gutierrez*, 2004-0706, p. 9 (La. App. 4 Cir. 2/16/05), 897 So.2d 781, 787.

Mr. Fowler and Mr. Jordan argue that they would not have signed the Agreements had they not been misinformed by Jason Boucvalt, who managed operations for ESH at the P66 refinery, and others that ESH had secured the long-term contract to continue working at the P66 refinery. Consequently, they argue, the Agreements are void due to error and fraud. Further, they argue that this Court should defer to the trial court's finding error and fraud in its denial of ESH's petition for preliminary injunction. ESH counters that the trial court made no finding of error or fraud and instead based its decision denying injunctive relief on other grounds, and that Mr. Fowler and Mr. Jordan failed to meet their burden of showing error or fraud in the execution of the Agreements.

Our review of the record shows that the trial court made no specific factual determination about whether Mr. Jordan and Mr. Fowler had met their burden of proving error or fraud. The trial court gave no oral reasons for judgment, and the written reasons for judgment issued by the trial court make no mention of error or fraud. Further, the final paragraph in the trial court's reasons for judgment states the trial court's denial of ESH's petition for preliminary injunction is based on the trial court's determination that ESH had not proven that Mr. Fowler and Mr.

Jordan's alleged violation of the agreements caused injury to ESH such that ESH lost the contract at the P66 refinery.

Whether error or fraud exists is a factual determination by the trial court, which is reviewed under the manifest error or clearly wrong standard of review. *Rosell*, 549 So.2d at 844. The trial court is silent on the issue of fraud and error, which leads this Court to conclude that the trial court did not make the factual determination that they voided the Agreements. *Leary v. Foley*, 2007-0751, p. 4 (La. App. 4 Cir. 2/13/08), 978 So.2d 1018, 1021, ("Generally when a judgment is silent with respect to a party's claim, it is presumed that the trial court denied the relief sought").

We cannot say this factual determination is manifestly erroneous. While Mr. Jordan and Mr. Fowler testified at trial that they would not have signed the Agreements had they known ESH had not secured the long-term contract at P66, other evidence produced at trial showed that both Mr. Jordan and Mr. Fowler had signed similar agreements with ESH in the past and there was no indication that those agreements were based on ESH's contracts. Further, both Mr. Fowler and Mr. Jordan testified at trial that they signed the agreements in conjunction with accepting new positions with ESH, making it equally likely that the Agreements were signed so that they could remain employed at ESH, and not because of their belief in the existence of the long-term contract. No other evidence of error or fraud was presented at trial by Mr. Fowler or Mr. Jordan. Therefore, the trial court's silence on the fraud and error—and thus the denial of that claim—are not manifestly erroneous. The contracts are therefore enforceable against Mr. Jordan and Mr. Fowler.

9

***Enforceability under La. R.S. 23:921***

Having determined that the agreements between ESH and Mr. Jordan and Mr. Fowler were valid contracts, we now turn to whether they are statutorily enforceable under La. R.S. 23:921. Mr. Jordan and Mr. Fowler argue that the Agreements are overly broad and vague, and are thus not enforceable.

Determining the statutory enforceability of the Agreements presents questions of law and requires an independent examination of the Agreements themselves, rather than a review of the district court's findings. Therefore, the applicable standard of review is *de novo*. *See New Orleans Jazz and Heritage Foundation, Inc. v. Kirksey*, 2009-1433, p. 9 (La. App. 4 Cir. 5/26/10), 40 So.3d 394, 401.

"In order to be a valid nonsolicitation/noncompetition agreement pursuant to La. R.S. 23:921(C), three overarching requirements must be met: (1) a two-year maximum duration, (2) a list of the areas in which the former employee is restrained, and (3) competition between the former employee and employer." *Causin, L.L.C. v. Pace Safety Consultants, LLC*, 2018-0706, pp. 10-11 (La. App. 4 Cir. 1/30/19), ___So.3d___, ___, 2019 WL 385206, *writ denied*, 2019-0466 (La. 5/20/19), 271 So.3d 203 (citing Jacob Ecker, *At the Breaking Point: Adapting Louisiana Employment Noncompete Law to the Information Age*, 75 La. L. Rev. 1317, 1333 (2015)).

Here, the first requirement for enforceability of the Agreements is clearly met: the Agreements prohibit Mr. Jordan and Mr. Fowler from "carrying on or engaging in a business similar to that of the Employer and/or soliciting customers of the Employer" for a "period of two (2) years after the termination of … employment with Employer."

Second, La. R.S. 23:921 requires that the Agreements specifically state the areas where the employee is prohibited from competing in order to be enforceable. It is not sufficient for an employer to make a general reference to the parishes or municipalities in which it does business in order for this requirement to be met. *See Aon Risk Servs. of Louisiana, Inc. v. Ryan*, 2001-0614, pp. 5-6 (La. App. 4 Cir. 1/23/02), 807 So.2d 1058, 1062 ("[b]y specifying the parishes, etc. and requiring that the employer be doing business in them, the employee is not later caught in a position where he finds that he has given up much more than he bargained should his employer greatly expand the geographic range of his business after the agreement is executed.") Instead, geographic limitation must be "express and clearly discernable" and must include "parishes where the ex-employer actually has a location or customers." *Vartech Systems, Inc.*, 2005-2499, p. 11, 951 So.2d at 258 (citing *Hose Specialty & Supply Mgmt. Co., Inc. v. Guccione*, 2003-823, p. 18 (La. App. 5 Cir. 12/30/03), 865 So.2d 183, 194 and *Cellular One, Inc. v. Boyd*, 1994-1783, p. 5 (La. App. 1 Cir. 3/3/95), 653 So.2d 30, 33, *writ denied*, 1995-1367 (La. 9/15/95), 660 So.2d 449). *See also Bell v. Rimkus Consulting Grp., Inc. of Louisiana*, 2007-996, p. 11 (La. App. 5 Cir. 3/25/08), 983 So.2d 927, 933-34.

The second requirement is likewise met. The Agreements list forty parishes that Mr. Jordan and Mr. Fowler are prohibited from competing within, including Plaquemines Parish, where ESH seeks to enforce the agreements. Mr. Fowler and Mr. Jordan argue that the large number of parishes listed in the agreements renders the agreements overbroad. The relevant question for statutory enforceability is not the number of parishes listed, however, but whether they are specifically listed and whether the employer actually does business in those parishes. The parishes are specifically listed, and testimony at trial established that, at a minimum, ESH has

11

locations and customers in Plaquemines Parish.[2] Donald Nalty, the chief operating officer at ESH, testified that ESH continues to do business in Plaquemines Parish. The defendants themselves testified about ESH's Belle Chasse office (located in Plaquemines Parish), establishing that this requirement is met.

Third, to be enforceable, a noncompetition agreement must prohibit competition between employee and employer, including defining what the business of the employer is that the employee is prohibited from competing within. An overly broad definition of the employer's business in a noncompetition agreement renders that provision (and thus the whole agreement) unenforceable because the "employer is only entitled to keep ex-employees from competing with the employer's actual business, not some overblown contractual definition of business designed to cover the proverbial waterfront and keep ex-employees from being able to make a living in any segment of the ex-employer's industry." *Paradigm Health System, L.L.C. v. Faust*, 2016-1276, p. 7 (La. App. 1 Cir. 4/12/17), 218 So.3d 1068, 1073 (citing *Vartech Systems*, 2005-2499 at p. 12, 951 So.2d at 259, n. 15). Even so, the law does not require a specific definition of the employer's business. *Baton Rouge Computer Sales, Inc. v. Miller-Conrad*, 1999-1200, p. 3 (La. App. 1 Cir. 5/23/00), 767 So.2d 763, 764.

---

[2] A review of the record does not show definitively that ESH has locations and/or customers in all of the parishes listed in the non-compete agreements, as the testimony at trial on this issue was Mr. Nalty's statement that ESH does business all over the State of Louisiana. That ESH may not have business or customers in every parish listed does not render the entire agreement unenforceable, however; rather, the unenforceable parishes listed can be removed and the remainder of the agreement can be upheld. *See Causin, L.L.C.*, 2018-0706, pp. 16-17, ___So.3d___, ___, 2019 WL 385206, *writ denied*, 2019-0466 (La. 5/20/19), 271 So.3d 203 (holding that the Court may amend a contract to remove the improper clause in the contract and allow the rest of the contract to stand so long as the contract does not depend upon the improper clause); *Wadick v. Gen. Heating & Air Conditioning, LLC*, 2014-0187, pp. 19-20 (La. App. 4 Cir. 7/23/14), 145 So.3d 586, 599.

Mr. Jordan and Mr. Fowler argue the definition of ESH's business in the Agreements is overly broad to the point of prohibiting them from working in any industry which is responsible for trash pick-up, including working as garbage men. They further argue the overbroad definition renders the agreements unenforceable. We disagree.

While the Agreements define ESH's business as including, "waste transportation and disposal," when read together with the other provisions contained in the definition, it is clear that this does not include any and all waste transportation and disposal. The definition is limited to "oil and hazardous spill containment." Additionally, based on the record, Mr. Fowler and Mr. Jordan were aware of the nature of ESH's business. Both Mr. Jordan and Mr. Fowler had been employed by ESH for a number of years at the time they executed the Agreements at issue in the instant case, and they both testified about their knowledge of the work ESH performed in general, and specifically at the P66 refinery. Therefore, the definition of the business contained in the Agreements was not so broad and vague as to render Mr. Jordan and Mr. Fowler from being able to discern what kind of business the Agreements considered competitive. Because all requirements under La. R.S. 23:921 have been met, we find the agreements are statutorily enforceable.

### ESH's Entitlement to Injunctive Relief

Having found that the Agreements are valid contracts and are statutorily enforceable, we consider whether ESH made a *prima facie* showing that it is entitled to injunctive relief. Based on a *de novo* review of the record, we find that ESH has made this showing.

It is undisputed that Mr. Fowler and Mr. Jordan executed the Agreements. It is likewise undisputed that Mr. Jordan and Mr. Fowler went to work for Clean Harbors within days of their employment with ESH ending, bringing them well within the two-year prohibited period under the Agreements. The record also reflects that their work with Clean Harbors is in Plaquemines Parish, one of the prohibited geographical areas in the agreements. Finally, the record reflects that Clean Harbors is a competitor of ESH within the meaning of the Agreements. All witnesses at the trial of the preliminary injunction, including Mr. Jordan and Mr. Fowler, testified that the long-term contract ESH was seeking to win with the P66 refinery was not awarded to them, but to Clean Harbors, and that it was awarded after a period of the two companies literally competing for the contract. Trial testimony also established that, shortly after the contract was awarded to Clean Harbors, ESH was asked to leave the P66 refinery because Clean Harbors was performing the same work ESH had been performing there. Therefore, Clean Harbors is a competitor of ESH performing the same or a similar business as ESH, and Mr. Jordan and Mr. Fowler violated the terms of the Agreements by going to work at Clean Harbors. The trial court, therefore, erred in not ordering the preliminary injunction. We reverse the trial court, grant the preliminary injunction, and remand for further proceedings.

## DECREE

For the foregoing reasons, the trial court's judgment is reversed, and the case is remanded to the trial court for further proceedings.

**REVERSED AND REMANDED**