983 So.2d 927 (2008)
Gary L. BELL, Nick G. Cammarata and Michael H. DeHarde
v.
RIMKUS CONSULTING GROUP, INC. OF LOUISIANA.
No. 07-CA-996.
Court of Appeal of Louisiana, Fifth Circuit.
March 25, 2008.
*928 Larry E. Demmons, Attorney at Law, New Orleans, LA, for Plaintiff/Appellee.
Jeffrey K. Warwick, Attorney at Law, Metairie, LA, for Defendant/Appellant.
Panel composed of Judges THOMAS F. DALEY, SUSAN M. CHEHARDY, and WALTER J. ROTHSCHILD.
WALTER J. ROTHSCHILD, Judge.
In this employment case, defendant appeals from a summary judgment rendered in favor of plaintiffs on the issue of the validity of non-competition and non-solicitation clauses in the employment agreement between the parties. For the reasons stated herein, we affirm.
Facts and Procedural History
Plaintiffs, Gary L. Bell, Nick G. Cammarata and Michael H. DeHarde, are former employees of Rimkus Consulting Group, Inc., an engineering and technical consulting firm or its wholly-owned subsidiary, Rimkus Consulting Group of Louisiana, Inc. (both corporations hereinafter referred to as defendant). Following the termination of their employment in 2006, plaintiffs filed a Petition for Declaratory Judgment seeking a judgment declaring the enforceability or non-enforceability of various provisions of certain contracts between plaintiffs and defendant. Defendant responded with several exceptions, *929 none of which are at issue in this appeal. Defendant subsequently answered the petition and additionally brought a reconventional demand against plaintiffs for violations of their employment agreements.[1] Thereafter, plaintiffs filed the present motion for partial summary judgment of the issue of enforceability of the pertinent clauses in the employment contracts.
By judgment rendered on July 26, 2007, the trial court granted in part the motion for partial summary judgment.[2] The judgment reads in pertinent part:
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Plaintiffs' Motion for Partial Summary Judgment is GRANTED IN PART with respect to the 1995 Employment Agreement between Gary Bell and Rimkus Consulting Group, Inc. of Louisiana and the 1996 Employment Agreement between Nick Cammarata and Rimkus Consulting Group, Inc., the Court finding that pursuant to Louisiana law, the covenant not to compete clauses contained in Paragraphs 8(a) and the non-solicitation clauses contained in Paragraphs 8(c) of the respective contracts are invalid and unenforceable.
The trial court further certified this judgment as a final judgment pursuant to La. C.C.P. art. 1915(B)(1). This appeal followed.
Law and Discussion
Appellate courts review evidence de novo under the same criteria that govern the trial court's determination of whether summary judgment is appropriate. Independent Fire Ins. Co. v. Sunbeam Corp., 99-2181, 99-2257 (La.2/29/00), 755 So.2d 226. The summary judgment procedure is favored and is designed to secure the just, speedy, and inexpensive determination of every action. La. C.C.P. art. 966(A)(2). The motion should be granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue as to material fact and that mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B).
The burden of proof is on the mover to show that he is entitled to judgment as a matter of law. La. C.C.P. art. 966(C)(2). If, however, the mover will not bear the burden of proof at trial on the matter that is before the court on the Motion for Summary Judgment, the mover need only point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Id. Thereafter, the adverse party must produce factual evidence sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial. Id. If the adverse party fails to meet this burden, there is no genuine issue of material fact, and the mover is entitled to summary judgment. Id.
In SWAT 24 Shreveport Bossier, Inc. v. Bond, 00-1695, p. 4 (La.6/29/01), 808 So.2d 294, 298, the Supreme Court stated as follows:
Louisiana has long had a strong public policy disfavoring non-competition agreements between employers and employees. Louisiana Smoked Products, Inc. v. Savoie's Sausage & Food Products, 96-1716, p. 11 (La.7/1/97), 696 So.2d 1373, 1379. Thus, the longstanding public policy of Louisiana has been *930 to prohibit or severely restrict such agreements. Id.

Presently, La. R.S. 23:921 sets forth the means by which an employer may prohibit its employees from competing with and/or soliciting customers of the employers after termination of employment. That statute provides in pertinent part:
A. (1) Every contract or agreement, or provision thereof, by which anyone is restrained from exercising a lawful profession, trade, or business of any kind, except as provided in this Section, shall be null and void.
(2) The provisions of every employment contract or agreement, or provisions thereof, by which any foreign or domestic employer or any other person or entity includes a choice of forum clause or choice of law clause in an employee's contract of employment or collective bargaining agreement, or attempts to enforce either a choice of forum clause or choice of law clause in any civil or administrative action involving an employee, shall be null and void except where the choice of forum clause or choice of law clause is expressly, knowingly, and voluntarily agreed to and ratified by the employee after the occurrence of the incident which is the subject of the civil or administrative action.
* * *
C. Any person, including a corporation and the individual shareholders of such corporation, who is employed as an agent, servant, or employee may agree with his employer to refrain from carrying on or engaging in a business similar to that of the employer and/or from soliciting customers of the employer within a specified parish or parishes, municipality or municipalities, or parts thereof, so long as the employer carries on a like business therein, not to exceed a period of two years from termination of employment. An independent contractor, whose work is performed pursuant to a written contract, may enter into an agreement to refrain from carrying on or engaging in a business similar to the business of the person with whom the independent contractor has contracted, on the same basis as if the independent contractor were an employee, for a period not to exceed two years from the date of the last work performed under the written contract.
Louisiana's strong public policy restricting these types of agreements is based upon an underlying state desire to prevent an individual from contractually depriving himself of the ability to support himself and consequently becoming a public burden. Because such covenants are in derogation of the common right, they must be strictly construed against the party seeking their enforcement. SWAT 24 Shreveport Bossier, Inc. v. Bond, supra, 00-1695, p. 5, 808 So.2d at 298 (citations omitted).
In support of their motion for summary judgment, plaintiffs submitted copies of the Employment Agreements at issue in this case. Gary Bell (Employee) signed an Employment Agreement with Rimkus Consulting Group, Inc. of Louisiana (Company) on May 19, 1995. Nick Cammarata (Employee) signed an Employment Agreement with Rimkus Consulting Group, Inc. (Company) on October 16, 1996. The language of these agreements is identical. Paragraph 16 of the agreements provides as follows:
16. Place of Performance; Governing Law. This Agreement is executed in Houston, Texas. Further, any dispute or other proceeding to enforce the terms of the Agreement shall be adjudicated by a court of competent jurisdiction in Harris County, Texas. This Agreement *931 and all rights, obligations and liabilities arising hereunder shall be governed by, and construed and enforced in accordance with the laws of the State of Texas (excluding its conflicts of laws provisions) applicable to contracts made and to be performed therein. IN the event that if, for any reason, any dispute or other proceeding to enforce the terms of this Agreement shall be adjudicated by a court of competent jurisdiction pursuant to the Louisiana Code of Civil Procedure, then this Agreement and all rights hereunder shall be governed by and construed and enforced in accordance with the laws of the State of Texas pursuant to Louisiana Civil Code article 3540.
Paragraph 8 of the 1995 and 1996 Employment Agreements provides in pertinent part:
8. Covenant Not to Compete. The parties agree that Company has developed and will develop systems, techniques, methodologies, training programs and related literature, and procedures (hereinafter referred to as "the methods") for use in its normal business operations, including marketing and administrative aspects thereof that are critical to the continuing success and viability of the Company. * * * It is agreed, for an in consideration of the Company's agreement to engage Employee to perform personal services and the resulting access by Employee to customer names and files, and the methods and techniques of the Company, in-company and external training provided by Company, trade secrets and other proprietary and confidential information, and other consideration, that so long as Employee is employed by the Company and for eighteen (18) months after such employment ceases for any reason, whether with or without cause, voluntarily or involuntarily, Employee agrees that he will not, directly or indirectly, individually or through any interposed person, entity or enterprise, compete with the Company. Accordingly, during such period, Employee agrees as follows:
a. Employee will not, directly or indirectly, own, manage finance control or participate in the ownership, financing or control of, or be connected as a partner, principal, agent, employee, independent contractor, management advisor and/or management consultant with, or use or permit his name or resume to be used in connection with any business or enterprise performing consulting services similar to those carried on by the Company in the "Designated Geographic Area" involving the investigation of incidents, circumstances, conditions, or events arising out of the claims, disputes, or litigation process, and are of the nature of matters which are directly or indirectly originated, administered, serviced, and/or processed by or through insurance companies; independent adjustment firms; corporations; governmental commissions, bureaus, agencies and authorities; or law firms. * * * For the purposes of this Agreement "Designated Geographic Area" shall mean any standard or consolidated metropolitan statistical area as those terms are defined by the United States Department of Commerce (or if a client is not located in a standard or consolidated metropolitan statistical area as those terms are defined by the United States Department of Commerce, then the city, town or township in which such client is located and the counties or parishes contiguous thereto) in which a client or clients of the Company are located and from which such client or clients have engaged Company on not less than five *932 (5) separate files or engagements during the five (5) calendar years proceeding termination of Employee's employment with Company. If Company has received less than five (5) such assignments or engagements from a client in any Designated Geographic Area, then Employee shall be free to compete in such Designated Geographic Area. . . .
* * *
c. Employee agrees, that for a period lasting until eighteen (18) months after termination of his employment, he will not at any time, directly or indirectly, solicit the Company's customers which are located in the "Designated Geographic Area;
By this appeal, defendant contends the trial court erred by failing to take notice of the geographical limitation contained in the agreements which are in compliance with Louisiana law. Defendant also contends the trial court erred in holding that Louisiana law, rather than Texas law, was applicable to the contracts at issue. Plaintiffs respond that these agreements fail to comply with the statutory requirements set forth in La. R.S. 23:921 because they do not include any parishes or municipalities by name in which Bell or Cammarata are prohibited from competing and/or soliciting. Plaintiffs also contend that the trial court correctly applied Louisiana law to the facts of this case.
Choice of Law Provision
Plaintiffs contend that, in response to defendant's exceptions of lack of jurisdiction and improper venue, the trial court previously determined that Louisiana law applies to the facts of this case, and that a panel of this court upheld this determination by denying defendant's application for supervisory review. See, Bell, et al. v. Rimkus Consulting Group, Inc., of Louisiana, 07-C-251, April 30, 2007. Plaintiffs thus argue that this determination is "law of the case."
The law of the case principle is a discretionary guide which relates to the rule that an appellate court ordinarily will not reconsider its own rulings of law on a subsequent appeal in the same case. In re K.R.W., Jr., 03-1371 (La.App. 5 Cir. 5/26/04), 875 So.2d 903, 905. However, an appellate court's denial of supervisory writs does not bar reconsideration of an issue on appeal, nor does it prevent the appellate panel from reaching a different conclusion on the issue. Reconsideration is warranted when, in light of a subsequent trial record, it is apparent that the determination was patently erroneous and produced unjust results. Id.
As this issue was decided on a denial of supervisory writs, reconsideration thereof is not barred. Thus, we will review the contractual agreement between the parties and determine the applicable state law in this case.
Forum selection clauses will be upheld unless they contravene strong public policy of the forum in which the suit is brought. La. C.C. art. 3540. La.R.S. 23:921 A(2), a provision which was added by the legislature in 1999, is an expression of strong Louisiana public policy concerning forum selection clauses. Although the agreements in this case were executed in 1995 and 1996 before the effective date of the amendment, La.R.S. 23:921 A(2) relating to the enforceability of forum selection clauses is a procedural law which applies retroactively as well as prospectively. Sawicki v. K/S Stavanger Prince, 01-528, p. 12 (La.12/7/01), 802 So.2d 598, 606.
Defendant contends that the contractual provisions relate to choice of law issues rather than to forum selection and that the Supreme Court's holding in Sawicki is therefore not controlling. However, Louisiana *933 law expressly provides that conventional obligations are governed by the law of the state whose policies would be most seriously impaired if its law were not applied to the issue. La. C.C. art. 3537. Further, issues of conventional obligations may be governed by law chosen by the parties, except to the extent that law contravenes the public policy of the state whose law would be applicable under La. C.C. art. 3537. La. C.C. art. 3540. (Emphasis ours.)
As previously stated herein, Louisiana has a longstanding public policy to prohibit or severely restrict non-competition provisions in employment agreements which curtail an employee's right to his earn his livelihood. These agreements are in derogation of the common right, and they must be strictly construed against the party seeking their enforcement. SWAT 24 Shreveport Bossier, Inc. v. Bond, supra, 00-1695, p. 4, 808 So.2d at 298, and cases cited therein. Application of Texas law to this dispute would thwart Louisiana's longstanding public policy and interest in this type of matter.
According to well established Louisiana law and jurisprudence, the forum selection and choice of law provisions contained in the 1995 and 1996 employment contracts are null and void. Thus, the agreements in this case are governed by Louisiana law.
Geographic Limitations
We turn next to the issue of whether the employment agreements in this case were confected in accordance with Louisiana law. Although Louisiana law generally disfavors non-competition agreements between employees and employers, certain statutory exceptions have been set forth by the legislature. La. R.S. 23:921(C) provides in pertinent part that an
"employee may agree with his employer to refrain from carrying on or engaging in a business similar to that of the employer and/or from soliciting customers of the employer within a specified parish or parishes, municipality or municipalities, or parts thereof, so long as the employer carries on a like business therein, not to exceed a period of two years from termination of employment"
An agreement limiting competition must strictly comply with the requirements of LSA-R.S. 23:921. LaFourche Speech & Language Services, Inc. v. Juckett, 94-1809, p. 3 (La.App. 1 Cir. 3/3/95), 652 So.2d 679, 680, writ denied, 95-0850 (La.5/12/95), 654 So.2d 351. Louisiana jurisprudence has interpreted this statute to require that the geographic limitation be express and clearly discernable. Hose Specialty & Supply Management Co., Inc. v. Guccione, 03-823 (La.App. 5 Cir.2003), 865 So.2d 183, 194, citing SWAT 24 Shreveport Bossier, Inc. v. Bond, supra, 808 So.2d at 306. Further, Louisiana courts have held that general reference in the agreement to whatever parishes, counties or municipalities the Company conducted business did not comply with the statute. Aon Risk Services of Louisiana, Inc. v. Ryan, 01-614 (La.App. 4 Cir. 1/23/02), 807 So.2d 1058; Kimball v. Anesthesia Specialists of Baton Rouge, Inc., 00-1954 (La.App. 1 Cir. 9/28/01), 809 So.2d 405, writs denied, 01-3316, 01-3355 (La.3/8/02), 811 So.2d 883, 811 So.2d 886.
In the present case, the agreement refers to a "Designated Geographic Area" which is defined as "any standard or consolidated metropolitan statistical area as those terms are defined by the United States Department of Commerce" in which a client is located. However, La. R.S. 23:921 requires the parish or parishes, municipality or municipalities, or parts thereof, be "specified." We find no such specification in the present case. Although defendant contends that plaintiffs *934 in their senior capacities possessed sufficient information which would have allowed them to determine or at least request information regarding which areas were prohibited in the non-competition agreement, we fail to find that the statute contemplates such an action on the employee's part. Rather, the statute requires that the parishes or municipalities be specified as an objective measure of the agreement's validity and for the employee to know and understand the limitations upon the signing of the agreement. See, Aon Risk Services of Louisiana, Inc. v. Ryan, supra, 01-614, pp. 5-6, 807 So.2d at 1062.
Applying a strict construction to the provisions of the agreement which refer to "Designated Geographic Area," we must find that the provisions fail to comply with statutory requirements. Further, although defendant submits that the terms of the agreements should be reformed to comply with Louisiana law, we fail to find sufficient basis in the record to allow such a reformation.
Conclusion
Accordingly, we find the non-competition and non-solicitation provisions in the employment agreements in this case are invalid and unenforceable as a matter of law. We therefore affirm the judgment of the trial court granting partial summary judgment in favor of plaintiffs in this matter. Defendant shall bear all costs of this appeal.
AFFIRMED.
NOTES
[1] The record indicates that plaintiffs formed U.S. Forensic, L.L.C. in October of 2006 and defendant contends this action violates the terms of the agreements.
[2] The judgment did not include a ruling in favor of plaintiff Michael DeHarde, and thus Mr. DeHarde's claims are not before us in this appeal.