WELCH, J.
I ¿This writ application comes before us on remand from the Louisiana Supreme Court for briefing, argument and full opinion. The issue raised by the application is whether the trial court erred in denying the plaintiffs’ motion for partial summary judgment and in determining that Pennsylvania law, rather than Louisiana law, governed the plaintiffs’ No Competition, Non-Disclosure Agreements (“NCND agreements”). For reasons that follow, we reverse the judgment of the trial court, grant the plaintiffs’ motion for partial summary judgment, and remand this matter for further proceedings.
FACTUAL AND PROCEDURAL HISTORY
The plaintiffs, Patrick O’Hara and Wallace Schaefer, filed a petition for declaratory judgment against the defendants, Glo-bus Medical, Inc. (“Globus”), a Delaware corporation that has its principal place of business in Pennsylvania, and Vortex Spine, LLC (“Vortex”); a Louisiana limited liability company. In the petition, the plaintiffs sought to have certain restrictive covenants declared unenforceable pursuant to La. R.S. 23:921.
According to the plaintiffs’, petition, they have made their living for several years in the field of medical equipment sales and related services in Louisiana. The plaintiffs alleged that they acted as sales representatives for Vortex (a distributor for Globus), which manufactures, distributes, and sells products and services for spinal surgery, but that they have never been employed by Globus.
*72 Aii exclusive distributor agreement (“EDA”) governed the relationship between Globus, Vortex, and Vortex’s principal, James Long; the plaintiffs are not parties to the EDA. The EDA was in effect from January 1, 2010, through April 18, 2014. The EDA describes the “Exclusive Distributor” status of Vortex as follows:
| ¿¡Company hereby 'grants to Distributor the exclusive right to sell in the Region described on Exhibit A attached hereto and made a part hereof, all Company products sold and distributed, including all surgical implants, instruments and associated accessories, and provision of services related thereto ... and Distributor hereby accepts such grant, all'subject to the conditions, limitations and provisions set forth in this Agreement. Initially, the Region shall consist of seven (7) Territories as described in Exhibit A.[1]
The EDA contains a section addressing confídentiality/no competition, which provides,, in part, that “neither Distributor [Vortex] nor any of its employees, agents, representatives, nor Principals ... shall, directly or indirectly, become ... a proprietor, stockholder, director, officer, employee, agent, representative or member of any .entity in the continental United States which is engaged in, the medical products business.” The EDÁ further provides that “the parties have expressly agreed that this Agreement, the parties’ performance hereunder[,] and the relationship between them shall be governed by, construed[,] and enforced in accordance with" the laws of the Commonwealth of Pennsylvania, without regard to the principles thereof regarding conflicts of laws.”
Mr. Schaefer executed an “Exclusive Distributor Representative No Competition and Non-Disclosure Agreement” with Vortex on July 25, 2011 (“Schaefer NCND Agreement”), although the .form agreement was supplied by Globus to Vortex pursuant to the EDA, Mr. Schaefer signed the agreement under the signatory line for “agent,” and Mr. Long signed under the signatory line for “Company.”[2] This agreement contained the following “Acknowledgements”:
A. The Company is engaged in the sale of products and services for spine surgery (“Products”), ineluding the exclusive sale and distribution of products (“Globus Products”) for Globus Medical, Inc. | ¿(“Globus”) within a defined geographical territory (“Globus Territory”).
B. Agent performs sales and distribution services for and on behalf of the Company, either as a direct employee or through an independent service contract, including services in connection with the sales and distribution of Globus Products. .
C. For purposes of the NCND Agreement, Agent’s performance of services and receipt of compensation from the Company will be defined as the Agency Agreement (the “Agency Agreement”) between the Agent and the Company, whether or' not a written agreement exists between the Agent and the Compa *73 ny governing said services and compensation, •
D. For purposes ■of the NCND Agreement, the Agency Agreement Term (“Agency Agreement Term”) shall be defined as the time period during which-the Agent performs said sales and distribution services on behalf of the Company.
E.' For purposes of this NCND Agreement, the NCND Territory (“NCND Territory”) shall be defined as the geographic area assigned to the Agent within the most recent 12 months of the Agency Agreement Term. In the event that the Agent has been assigned certain accounts and not a geographic area, the NCND territory shall be defined as the geographic area within a 10-mile radius of each assigned account. In the event the Agent has not been assigned specific accounts or a specific geographic region, the NCND Territory shall be defined as the Globus Territory.
* * #
G. For purposes of the NCND Agreement, Medical Personnel (“Medical Personnel”) shall, be defined as orthopedic surgeons, neurosurgeons, physicians, nurses[,] and other, medical personnel involved in the implantation and other handling and usage , of the Products.
H. For purposes of this NCND Agreement, Hospitals (“Hospitals”) shall be defined as hospitals, surgery centers, medical centers[,] and other health care facilities that purchase Products .and the location at which Medical Personnel perform services related to the implantation and other implantation and other handling and usage of the Products.
I. Agent will have access to confidential, proprietary!,] and trade secret information (“Confidential Information”) belonging to the Company and/or to Glo-bus —
J.Agent will receive information and be trained in the highly technical, competitive!;,] and specialized -business of spine surgery and spinal implants and instrumentation.
| fjThe Schaefer NCND Agreement also contained a “No Competition & No Solici-tátion Covenant” providing as follows:
1.1 Competitive Activity. For purposes of this NCND Agreement, Competitive Activity (“Competitive Activity”) shall be defined, as participation in, performance of services for, employment by, ownership of any interest in, or assistance, promotion!,] or organization of, any person, partnership, corporation, firm, limited liability company, assoeiation[,] or other business entity that manufactures; sells, markets!,] or distributes products or services used in spine surgery (“Competing Company”)....
1.2 No Competition Period. For purposes of-this NCND Agreement, the No, Competition Period (“No Competition Period”) shall be defined as the time period encompassing both the Agency Agreement Term and the 12-month period immediately after the termination of the Agency Agreement.
1.3 No Competition or Solicitation Covenant. - Agent agrees not to engage in any Competitive Activity with any Hospitals or Medical Personnel during the No Competition Period in the NCND Territory. Furthermore, during the No Competition Period, Agent agrees not to directly or indirectly, either for the Agent’s benefit or the benefit, of another entity, solicit, call on, interfere with, or attempt to divert, entice away, sell to[,] or market to any customer, Hospital[,] or Medical Personnel in the NCND Territory.
1.4 No Solicitation of Company’s Agents or-Employees. During the No *74 Competition Period, Agent agrees not to directly or indirectly, either for the Agent’s benefit or the benefit of another entity, employ or offer to employ in any capacity; contact or recommend for employment with a Competitive Company; contact or recommend for the purposes of entering into a contractual relationship with a Competitive Company; solicit, call on, interfere -with, or attempt to divert, or entice away; any individuals who were agents, independent contractors, representatives[,] or employees of the Company or of Globus on the date that the Agency Agreement was terminated or for the 12-month period immediately preceding the termination of the Agency Agreement.
The Schaefer NCND Agreement also provided that “Company has agreed to assign its rights and benefits under this NCND Agreement to Globus, if Globus so requests” and “[i]f such assignment occurs, Company and Agent Acknowledge that Globus shall enjoy all of the rights and benefits of the Company under this NCND Agreement.” Lastly, the Schaefer NCND Agreement provided that “[i]n order to maintain uniformity in the interpretation of this NCND Agreement^] the parties | nhave expressly agreed that this NCND Agreement, the parties’ performance hereunder[,] and the relationship between them shall be governed by, construed[,] and enforced in accordance with the laws of the Commonwealth of Pennsylvania, -without regard to the principles thereof regarding conflicts of laws.”
Mr. O’Hara executed a “No Competition and Non-Disclosure Agreement” (“O’Hara NCND Agreement”) with Glo-bus on September 7, 2007; however, the agreement contains no signature by anyone on behalf Globus. Nonetheless, this agreement identifies Globus as the “Company” and Mr. O’Hara as “Employee.” The “Acknowledgments” contained in the O’Hara NCND Agreement are substantially similar to those contained in the Schaefer NCND Agreement, other than the term “Employee” is used throughout the O’Hara NCND Agreement rather than the term “Agent” and the O’Hara NCND Agreement is referenced as “the Employment Agreement” rather “the Agency Agreement.” In addition, one of the acknowledgments in the O’Hara NCND Agreement further provides “Employee performs services for and on behalf of the Company, either as a direct employee or through an independent service contract, for which Company compensates Employee.” While the O’Hara NCND Agreement does not contain an acknowledgment defining the “Agency Agreement Term,” it does contain a similar “No Competition and No Solicitation Covenant,” which defines the “No Competition Period,” as the time period encompassing both the “term of the Employment Agreement and the 12-month period immediately following the termination of the Employment Agreement.” The O’Hara NCND Agreement also imposed the same “10-mile radius” restriction around each assigned account in the event the “Employee has been assigned certain accounts and not a geographic area” and “[i]n the event the Employee has not been assigned specific accounts or a specific geographic region, the No Competition Territory shall be defined as the United States of America.” Mr. O’Hara likewise agreed to the same no | ./Competition or solicitation covenant as did Mr. Schaefer, such that Mr. O’Hara agreed, during the “No Competition Period” he would not “solicit, call on, interfere with, or attempt to divert, entice away, sell to[,] or market to any customer, Hospital[,] or Medical Personnel in the No Competition Territory.” Lastly, the O’Hara NCND Agreement algo contained a provision that the interpretation of the *75 O’Hara NCND Agreement and the relationship between the parties “shall be governed by, construed[,] and enforced in accordance with the laws of the Commonwealth of Pennsylvania, without regard to the principles thereof regarding conflicts of laws.”
On April 23, 2014, the vice-president of Globus, Kelly G. Huller, sent a letter to Mr. Long at Vortex. According to the letter, the EDA had terminated April 18, 2014 when the last extension of the EDA expired. The letter requested the return of inventory and confidential information and further reminded Mr. Long of the “post-termination contractual obligations of non-competition [and] non-solicitation ... contained in ... the EDA[,] binding [Mr. Long], Vortex[,] and Vortex employees and agents to certain restrictions on competition in the parishes outlined in the EDA.” The letter also stated that Globus had “reason to believe you and/or Vortex (and its employees or agents) are not abiding by the post-termination restrictions” and “demanded] that [Mr. Long], Vortex[,] and its employees and agents immediately cease and desist all conduct in violation of the EDA restrictive covenants.”
A week later, on April 30, 2014, the plaintiffs filed this lawsuit against Vortex[3] and Globus, seeking a declaratory judgment that: 1) the NCND Agreements were governed by Louisiana law; (2) the EDA and NCND Agreements did not validly prohibit or limit the plaintiffs’ right or ability to work |sfor, provide services, contract with, or do business with any entity in any industry, field, or specialty; and 3) the EDA and the NCND Agreements did not validly prohibit, limit, or otherwise interfere with the right or ability of plaintiffs to engage in any business in competition with the defendants or to solicit the business of any former, current, or new client or customer, of the defendants. Additionally, the plaintiffs sought injunctive relief to enjoin Globus, and others in participation with it, from attempting to evade the court’s jurisdiction oyer the matters addressed in this case through other proceedings seeking to enforce either the choice of forum clause or choice of law clause contained in the EDA or the choice of law clauses in the plaintiffs’ NCND agreements, or any restrictive covenant contained therein. The plaintiffs further claimed damages and attorney’s fees based on Globus’s attempt to enforce these “invalid restrictive covenants,” which constituted “an unfair trade practice prohibited by the Louisiana Unfair Trade Practices Law.”
On August 6, 2014, the plaintiffs filed a motion for partial summary judgment (“motion for.summary judgment”), asserting that they were entitled to a judgment in their favor and against the defendants, Vortex and Globus, declaring that the EDA (between Vortex and Globus) and the two NCND Agreements were unenforceable against them and that the plaintiffs were free to compete against Vortex and Globus, “including but not limited to soliciting any past, present, and future customers of Vortex and Globus, without geographical or other limitation.” In support of this motion, the plaintiffs asserted that both the EDA and the' NCND contained choice of law clauses that violated Louisiana law pertaining to restrictive covenants and that these NCND agreements failed to properly define the geographic scope of the restrictive covenants as required by *76 La. R.S. 23:921. Further, the plaintiffs maintained that they were not signatories to the EDA, and that they could not be constrained by the restrictive covenants entered into between Vortex and Globus.
|flIn support of the plaintiffs’ motion for summary judgment, they submitted the EDA and both NCND Agreements, along with an affidavit from Mr. Schaefer and Mr. O’Hara, in which each of them attested to the respective date that they signed their respective NCND Agreement in Orleans Parish, Louisiana, and to the following pertinent statements:
3. When I was a sales representative for [Vortex], I was a Louisiana resident. All of the sales services I performed for Vortex were performed in Louisiana.
4. I have never been employed by [Globus] in any capacity. I have never performed services for, or received compensation from Globus. I have never received any offer of employment .or continued employment by Globus; Glo-bus has never provided me a salary, health insurance benefits, bonuses,.sales commissions!,] or stock options.
5. I acted as an independent contractor to [Vortex and it] was a distributor of Globus products in Louisiana.
6. During my time with Vortex, I was not assigned a geographic area. I was assigned to various hospitals, medical centers, and even to individual surgeons within a hospital or medical practice. Some of the surgeons to whom I was assigned perform surgeries in multiple locations.
The record before us reflects that neither Globus nor Vortex filed an opposition to the plaintiffs’ motion for summary judgment. However, on August 22, 2014, Glo-bus filed a reconventional demand against the plaintiffs, claiming that the NCND Agreements were enforceable under Pennsylvania law and seeking a temporary restraining order and preliminary injunction, as well as damages arising from the plaintiffs’ alleged breaches of the NCND Agreements.
At a hearing on September 12, 2014, the trial court denied the plaintiffs’ motion for summary judgment.[4] After the trial court ruled in favor of Globus on the motion, the plaintiffs and Globus stipulated to the terms of a preliminary | ^injunction that, according to its terms, would be “modified or dissolved, as appropriate, in the evént that the [trial court] or a court of appeal determines that either or both of the [NCND]. Agreements are invalid or otherwise unenforceable, in whole or in part.” The terms of this agreement are set forth in an amended order of preliminary injunction, which was, signed by the parties on September 24, 2014 and by the trial court on September 29, 2014. Essentially, the plaintiffs agreed that they would not violate the terms of the “No Competition Covenant” contained in the NCND agreements; they expressly agreed that through April 28, 2015, they would not participate in, perform services, be employed by, own any interest in any person, corporation, firm, company, association or other business entity that manufactures, sells, markets, or distributes products or sendees used in spinal surgery.
*77 The plaintiffs filed an application for supervisory writ challenging the denial of their motion and requesting expedited treatment. The plaintiffs also requested that the trial court stay the proceedings, but the trial court denied the request; therefore, the plaintiffs sought a stay order from this court. t On. November 3, 2014, this court granted partial relief to the plaintiffs as follows:
WRIT GRANTED IN PART; STAY GRANTED. The district court erred in determining that the validity of the no competition and . non-disclosure agreements (“NCND agreements”) executed by the plaintiffs, Patrick O’Hara and [Wallace] Schaefer is governed by Pennsylvania law rather than Louisiana law. See La. Civ.Code art. 14 and La. R.S. 23:921(A)(2) and 23:921(C). We grant plaintiffs’ writ application in part and remand this matter for the district court to determine the validity of these agreements pursuant to Louisiana law. While the district court’s determination is pending, the following paragraphs of the “Agreement” section of the September 29, 2014 Amended Order of Preliminary Injunction are stayed: Paragraph 1 (addressing the terms of the No Competition Covenant contained in the NCND agreements), Paragraph 2 (addressing the terms of the No Solicitation Covenant contained in the NCND agreements), Paragraph 4 (enumerating doctors/entities that would not be solicited or contacted by plaintiffs), and Paragraph 6 (addressing the time period in which the consent preliminary injunction would remain in effect). In all other respects, the writ is denied.
Patrick O’Hara and Wallace Schaefer v. Globus Medical, Inc, and Vortex Spine, LLC, 2014-1436 (La.App 1st Cir. 11/3/14) (unpublished action).[5] Globus then filed an application for supervisory writ with the Louisiana Supreme Court, and on February 13, 2015, the Louisiana Supreme Court granted the application and remanded the matter to this court for briefing, argument, and full opinion. Patrick O’Hara and Wallace Schaefer v. Globus Medical, Inc. and Vortex Spine, LLC, 2015-0070 (La.2/13/15), 158 So.3d 827.
In the writ application, the plaintiffs claim that the trial court erred in denying their motion for partial summary judgment and ruling that Pennsylvania .law applied to the restrictive covenants. The plaintiffs, who worked in Louisiana as sales representatives for-Vortex, a Louisiana company, and have never worked for Globus, argue that the trial court’s .application of Pennsylvania law to otherwise unenforceable non-compete agreements prevents them from working in Louisiana. The plaintiffs assert that the applicable Louisiana Civil Code articles governing choice of law require the application of Louisiana law, as Louisiana is the state “whose policies would be most seriously impaired if its law were not applied.” La. C.C. art. 3537 and 3540. They further assert that the application of Pennsylvania law to this case thwarts Louisiana’s strong public policy against covenants not to compete and that Pennsylvania’s policies would not be impaired by the application of Louisiana law to restrictive covenants that have no bearing on work performed in Pennsylvania and do not pertain to an underlying contractual relationship between the Pennsylvania defendant and the Louisiana plaintiffs.
The plaintiffs further submit that La. R.S. 23:921(A) prohibits choice of law *78 clauses in non-compete agreements that purport to restrain a Louisiana citizen from earning a living in Louisiana. Citing La. R.S. 23:921(C), the plaintiffs argue that |12the prohibition applies equally to employees and independent contractors and that the plaintiffs have expressly rejected the choice of law provisions by filing their petition in the instant matter in Louisiana.
Globus contends that the trial court was correct in denying the plaintiffs’ motion for summary judgment and finding that it was entitled to the preliminary injunction because the statutory prohibition against choice of law provisions in “employment agreements” (set forth in La. R.S. 23:921(A)(2)) applies only to “employees” and not to “independent contractors.” Globus further contends that a Louisiana business person may freely choose to select the law that governs post-contractual restrictions on competition where the Louisiana citizen receives confidential information, trade secrets, and substantial training of another state’s corporation. Globus argues that Pennsylvania is the law of the state whose policies would be most impaired by the application of Louisiana law.
LAW AND DISCUSSION
A motion for summary judgment is a procedural device used to avoid a full-scale trial when there is no genuine issue of material fact, and the summary judgment procedure is favored and designed to secure the just, speedy, and inexpensive determination of every action. La. C.C.P. art. 966(A)(2); Power Marketing Direct, Inc. v. Foster, 2005-2023 (La.9/6/06), 938 So.2d 662, 668. A motion for summary judgment will be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, admitted for the purposes of the motion for summary judgment, show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B).
On a motion for summary judgment, the burden of proof is on the mover. If, however, the mover will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the mover’s burden on the 1 iamotion does not require that all essential elements of the adverse party’s claim, action, or defense be negated. Instead, the mover must point out to the court that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action, or defense. Thereafter, the adverse party must produce factual evidence sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial. If the adverse party fails to meet this burden, there is no genuine issue of material fact, and the mover is entitled to summary judgment. La. C.C.P. art. 966(C)(2).
Summary judgments are reviewed on appeal de novo, with the appellate court using the same criteria that govern the trial court’s determination of whether summary judgment is appropriate: whether there is any genuine issue of material fact and whether the mover is entitled to judgment as a matter of law. Power Marketing Direct, Inc, 938 So.2d at 669.
As set forth above, the plaintiffs sought partial summary judgment declaring: (1) that the EDA between Vortex and Globus was not enforceable against the plaintiffs, (2) that the NCND Agreements were not enforceable against the plaintiffs, i.e., that the O’Hara NCND Agreement was not enforceable against Mr. O’Hara and that the Schaefer NCND agreement was not enforceable against Mr. Schaefer, and (3) that the plaintiffs were free to compete against Vortex and Globus. Accordingly, *79 we will address the merits of each request for relief.

1. Enforceability of the EDA

With regard to the EDA between Vortex and Globus, we note that the material facts are not in dispute; therefore we look solely to the legal question presented by the plaintiffs’ motion for summary judgment, ie., whether, as a |14matter of law, the EDA between Vortex and Globus is binding or enforceable against the plaintiffs, who were not parties to that contract.[6]
It is well settled that only a party to a contract can be bound by its provisions. Farmers State Bank and Trust Company v. Leger, 503 So.2d 1141, 1143 (La.App. 3rd Cir.1987), citing La. C.C. art. 1983 (which provides that “[contracts have the effect of law for the parties”). In this case, there is no dispute that the plaintiffs were not parties to the EDA agreement between Vortex and Globus. Thus, the plaintiffs are not bound by any of its terms, including the restrictive covenants and the choice of law clauses. Accordingly, the plaintiffs are entitled to summary judgment in their favor and against Vortex and Globus declaring that the EDA between Vortex and Globus is unenforceable against them.

2. Enforceability of the NCND Agreements

a. The O’Hara NCND Agreement
As previously noted, the O’Hara NCND Agreement was between Globus and Mr. O’Hara. Although it is undisputed that Mr. O’Hara was an independent contractor of Vortex, Vortex was not a party to the O’Hara NCND agreement and the record' does not reveal any legal basis or right that would allow Vortex to seek enforcement of the O’Hara NCND Agreement. See La. C.C. arts. 1906 and 1983, et seq.
In determining whether the O’Hara NCND Agreement is enforceable by Glo-bus, we must examine the choiee of law provision and non-competition provisions set forth in that agreement in conjunction with the evidence offered on the motion for summary judgment.
11fiLouisiana Civil Code article 14 states, “Unless otherwise expressly provided by the law of this state, cases having contacts with other states are governed by the law selected in accordance with the provisions of Book IV of this Code.” With regard to conventional obligations, Book IV of the Louisiana Civil Code contains the following applicable provisions:
Louisiana Civil Code article 3537 provides:
Except as otherwise provided in this Title, an issue of conventional obligations is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue.
That state is determined by evaluating the strength and pertinence of the relevant policies of the involved states in the light of: (1) the pertinent contacts of each state to the parties and the transaction, including the place of negotiation, formation, and performance of the contract, the location of the object of the contract, and the place of domicile, habitual residence, or business of the parties; (2) the nature, type, and purpose of *80 the. contract; and (3) the policies referred to in Article 3515, as well as the policies of facilitating the orderly planning of transactions, of promoting multi-state commercial intercourse,, and of protecting one party from undue imposition by the other.
(Emphasis added).
Additionally, La. C.C. art. 3540 provides:
All other issues of conventional - obligations are governed by the law expressly chosen or clearly relied upon by the parties, except to the extent that law contravenes the public policy of the state whose law would otherwise be applicable under Article 3537.
In this case, the evidence offered by Mr. O’Hara in support of the motion for 'summary judgment established that the O’Hara NCND Agreement was executed in Louisiana; that when he worked as a sales representative for Vortex (a Louisiana company), he was a Louisiana resident; that all of the sales that he..effectuated for Vortex were performed in Louisiana; and that he has never performed services for or received compensation from Globus (a Pennsylvania company). No evidence was offered by Globus (or Vortex) establishing that Mr. O’Hara had any contacts with Pennsylvania; however, the O’Hara NCND Agreement provided that the h (¡agreement and the relationship between the parties would be governed by the law of Pennsylvania.
Under Louisiana law, it is generally acceptable for contracting parties to make a choice of state law that will govern the agreement between them. That choice will be given effect, exeépt to the extent that law contravenes the public policy of the state whose law would otherwise be applicable under La. C.C. art. 3537. La. C.C. art. 3540; THH Properties Ltd. Partnership v. Hill, 41,038 (La.App. 2nd Cir.6/2/06), 930 So.2d 1214, 1218. In this regard, we note that the O’Hara NCND Agreement identifies Mr. O’Hara as an “Employee” and the NCND Agreement as “the 'Employment Agreement.’” Over the years, Louisiana has had a strong public policy disfavoring non-competition agreements between employers and employees. SWAT 24 Shreveport Bossier, Inc. v. Bond, 2000-1695 (La.6/29/01), 808 So.2d 294, 298. This public policy is expressed in La. R.S. 23:921, which provides, in pertinent part, as follows:
A. (1) Every contract or agreement, or provision thereof, by which anyone is restrained from exercising a lawful profession, trade, or business of any kind; except as provided in this Section/shall be null and void. Howéver, every contract or agreement, or provision thereof, which meets the deceptions as provided in this Section, shall be enforceable.
(2) The provisions of every employment contract or agreement, or provisions thereof/by which any foreign or domestic employer or any other person or entity includes a choice of forum clause or choice of law clause in an employee’s contract of employment or collective bargaining agreement, or attempts to enforce either a choice of forum clause or choice of law clause in any civil or administrative action involving an employee, shall be null and void except where the choice of forum clause or choice of law clause is expressly, knowingly, and voluntarily agreed to and ratified by the employee after the occurrence of the incident which is the subject of the civil or administrative action.
# * *
C. Any person, including a corporation and the individual shareholders of such corporation, who is employed as an *81 agent, servant, or employee may agree with his employer to refrain from carrying on or engaging in a business similar to that of the employer |17and/or from soliciting customers of the employer within a specified parish or parishes, municipality or municipalities, or parts thereof, so long as the employer carries on a like business therein, not to exceed a period of two years from termination of employment. An independent contractor, whose work is performed pursuant to a written contract, may enter into an agreement to refrain from carrying on or engaging in a business similar to the business of the person with whom the independent contractor has contracted, on the same basis as if the independent contractor were an employee, for a period not to exceed two years from the date of thé last work performed under the written contract.
(Emphasis added.)
Louisiana’s strong public policy restricting these types of agreements is based upon an underlying state desire to prevent an individual from contractually depriving himself of the ability to support' himself and consequently becoming a public burden. Because such covenants are in derogation of the common right, they must be strictly construed against' the party seeking their enforcement. SWAT 21 Shreveport Bossier, Inc., 808 So.2d at 298.
Globus contends that La. R.S. 23:921(A)(2) does not invalidate the choice of law clause in the O’Hara NCND Agreement because the statute only prohibits choice of law clauses in an employee’s bm-ployment contract or agreement and Mr. O’Hara was an independent contractor and not an employee. Thus, Globus contends the prohibition or restriction set forth in La. R.S. 23:921(A)(2) is inapplicable; thus, the Pennsylvania choice of law clause in the O’Hara NCND Agreement does not contravene the public policy of this state and is enforceable.
The record reflects that Mr. O’Hara was an independent contractor; however, he worked in that capacity for Vortex-^not for Globus. Further, the O’Hara NCND agreement was between Mr. O’Hara and Globus. Since Globus is seeking enforcement of its NCND agreement with Mr. O’Hara, Mr. O’Hara’s status as an independent contractor for Vortex is irrelevant.[7]
The O’Hara NCND Agreement unequivocally identifies the agreement as “the ‘Employment Agreement’” and Mr. O’Hara as “Employee.” The provisions of La. R.S. 23:921(A)(2) prohibit choice of law clauses in an employee’s , employment contracts or agreements. Thus, the choice of Pennsylvania law clause in the O’Hara NCND Agreement is null and void and contravenes the public policy of this state. Accordingly, the trial court erred in determining, that Pennsylvania law, rather than Louisiana law, governs the validity of the O’Hara NCND agreement. See La. C.C. arts. 3537 and 3540.
Having determined that Louisiana law is applicable, we next turn to the issue of whether the O’Hara NCND Agreement was confected in accordance with Louisiana law. Although Louisiana law generally disfavors non-competition agreements between employees and employers, certain statutory exceptions have been set forth by the legislature. As set forth above, La. R.S. 23:921(C) provides in pertinent part that an “employee may agree with his employer to refrain from carrying on or *82 engaging in a business similar to that of the employer and/or from soliciting customers of the employer within a specified parish or parishes, municipality or municipalities, or parts thereof, so long as the employer carries on a like business therein, not to exceed a period of two years from termination of employment.”
An agreement limiting competition must strictly comply with the requirements of La. R.S. 23:921. See LaFourche Speech & Language Services, Inc. v. Juckett, 94-1809 (La.App. 1st Cir.3/3/95), 652 So.2d 679, 680, writ denied, 95-0850 (La.5/12/95), 654 So.2d 351; Kimball v. Anesthesia Specialists of Baton Rouge, Inc., 2000-1954 (La.App. 1st Cir.9/28/01), 809 So.2d 405, 411 writs denied, 2001-3316, 2001-3355 (La.3/8/02), 811 So.2d 883 and 886. A noncompetition agreement must specifically name the parishes or municipalities in which the agreement is to have effect. Varbech Systems, Inc. v. Hayden, 2005-2499 (La.App. 1st Cir.12/20/06), 951 So.2d 247, 258. What is important is that the geographic limitation be express and clearly discernable. Id. The purpose of requiring that the geographic limitation be specified is to provide an objective measure of the agreement’s validity and for the employee to know and understand the limitations upon the signing of the agreement. See Bell v. Rimkus Consulting Group, Inc. of Louisiana, 2007-0996 (La.App. 5th Cir.3/25/08), 983 So.2d 927, 934, writ denied, 2008-0891 (La.6/20/08), 983 So.2d 1276; Aon Risk Services of Louisiana, Inc. v. Ryan, 2001-0614 (La.App. 4th Cir.1/23/02), 807 So.2d 1058, 1062.
In this case, the affidavit of Mr. O’Hara established that he was not assigned to a geographic area, but was assigned to various hospitals, medical centers, and individual surgeons within a hospital or medical practice. This statement was not contradicted by either Vortex of Globus. The O’Hara NCND Agreement then establishes the no-competition territory for Mr. O’Hara’s as “the geographic area within a 10-mile radius of each assigned account.” However, La. R.S. 23:921 requires the parish or parishes, municipality or municipalities, or parts thereof, be “specified.” There is no such specification in the O’Hara NCND Agreement nor is the geographic limitation express or clearly dis-cernable. The O’Hara NCND Agreement purports to establish the no-competition territory as a 10-mile radius from each account; however, the term “account” is not defined and no specific accounts or locations are identified or defined in the O’Hara NCND Agreement. Thus, there is no objective measure of the geographical limitation in the O’Hara NCND Agreement such that Mr. O’Hara would know and understand the limitations when he signed the agreement. See Bell, 983 So.2d at 934.
Strictly construing the provisions of the O’Hara NCND agreement, we find that its non-competition and non-solicitation provisions fail to comply with the statutory requirements set forth in La. R.S. 23:921(C); thus, those provisions 1 ancontained therein are invalid and unenforceable as a matter of law. Accordingly, Mr. O’Hara is entitled to summary judgment in his favor and against Vortex and Globus declaring the O’Hara NCND Agreement unenforceable against him.
b. The Schaefer NCND Agreement
Concerning the enforceability of the Schaefer NCND agreement, the plaintiffs offered, in support of their motion for summary judgment, the affidavit of Mr. Schaefer, with a copy of the Schaefer NCND Agreement attached thereto. As previously set forth, the Schaefer NCND Agreement was between Mr. Schaefer and *83 Vortex; Globus was not a party to it. However, the Schaefer NCND Agreement does provide that Vortex has agreed to assign its rights and benefits under the Schaefer NCND Agreement to Globus “if Globus so requests” and that “[i]f such assignment occurs, [Vortex] and [Schaefer] acknowledge that Globus shall enjoy all of the rights and benefits of [Vortex] under the [Schaefer] NCND Agreement.”
Thus, in order for Globus to enforce the Schaefer NCND Agreement, it must have an assignment from Vortex of Vortex’s rights under the Schaefer NCND Agreement. Globus did not offer any evidence in opposition to the plaintiffs’ motion for summary judgment and the record before us does not contain any evidence of such an assignment from Vortex to Globus. Absent such assignment, we must conclude that Globus has no right to enforce the Schaefer NCND Agreement against Mr. Sehaefer.[8]
With regard to its enforceability by Vortex, we again must examine the choice of law provision and non-competition provisions set forth in that agreement laiin conjunction with the evidence offered on the motion for partial summary judgment. The evidence offered by Mr. Schae-fer established that the Schaefer NCND Agreement was executed in Louisiana; that when he worked as a sales representative for Vortex (a Louisiana company), he was a Louisiana resident; that all of the sales that he effectuated for Vortex were effectuated in Louisiana; and that he has never performed services for, or received compensation from, Globus (a Pennsylvania company). No evidence was offered by Vortex (or Globus) establishing that Mr. Schaefer had any contacts with Pennsylvania; however, the Schaefer NCND Agreement provided that the agreement and the relationship between the parties would be governed by the law of Pennsylvania.[9]
The Schaefer NCND agreement identifies Mr. Schaefer as an “Agent” and the NCND Agreement as “the ‘Agency Agreement.’ ” As to Vortex, Mr. Schaefer stated in his affidavit that he was an independent contractor. Louisiana Revised Statutes 23:921(C) authorizes independent contractors “whose work is performed pursuant to a written contract” to enter into a noncompetition agreement “on the same basis as if the independent contractor were an employee.” ■ Thus, reading La. R.S. 23:921(A)(2) and (C) together, the plaintiffs argue that, since independent contractors can enter into non-competition and non-solicitation agreements on the same basis as an employee, independent contractors, like employees, cannot be bound by foreign choice of law clauses in such agreements. Thus, La. R.S. 23:921(A)(2) renders null and void *84 any choice of law clause in the. Schaefer NCND Agreement.
However, Globus claims that La. R.S. 23:921(A)(2) does not invalidate the choice of law clause.[10] Globus contends that only “employees,”, and not independent contractors, are entitled to the- benefit of the choice .of law prohibition/limitation .set forth in La. R.S. 23:921(A)(2); thus,- Glo-bus argues the prohibition or restriction set forth in La. R.S..23:921(A)(2) is inapplicable, the Pennsylvania choice of law clause in the Schaefer NCND Agreement does not contravene the public policy of this state, and it is enforceable.
The resolution of this issue is a matter of statutory' construction. In all cases of statutory construction or interpretation, legislative intent is the fundamental question, and the well-established rules- of statutory construction are designed to ascertain and enforce the intent of the statute. Boudreaux v. Louisiana Dept. of Public Safety and Corrections, 2012-0239 (La.10/16/12), 101 So.3d 22, 26. Legislation is the solemn expression of the legislative will and, therefore,- the interpretation of a law primarily involves the search for the legislature’s intent. Red Stick Studio Dev., L.L.C. v. State ex rel. Dep’t of Econ. Dev., 2010-0193 (La.1/19/11), 56 So.3d 181, 187. The starting point in ascertaining that legislative intent is the language of the statute itself. Livingston Parish Council On Aging v. Graves, 2012-0232 (La.12/4/12), 105 So.3d 683, 685. In examining that- language, words and phrases are to be read in their context and to be accorded their generally prevailing meaning, La. C.C. art. 11; La. R.S. 1:3. When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written, and no further interpretation may be made in search ofj^the intent of the legislature. See La. C.C. art. 9; In re Succession of Faget, 2010-0188 (La.11/30/10), 53 So.3d 414, 420.
It is also well established that the Legislature is presumed to enact each statute with deliberation and with full knowledge of all existing laws on the same subject. M.J. Farms, Ltd. v. Exxon Mobil Corp., 2007-2371 (La.7/1/08), 998 So.2d 16, 27, amended on rehearing on other grounds, 2007-2371 (La.9/19/08), 998 So.2d 33. Thus, “legislative language will be interpreted on the assumption that the Legislature was aware of existing statutes, well established principles 'of statutory construction and with knowledge of the effect of their acts and purpose in view,” Id. It is equally well-settled under the rules of statutory construction, where it is possible, that courts have a duty in the interpretation of a statute to adopt a construction which harmonizes and reconciles it with other provisions dealing with the same subject matter. Id.
As previously set forth, Louisiana’s strong public policy disfavoring noncom-petition agreements is reflected in La. R.S. 23:921(A), which states that “[e]very contract or agreement” restraining “anyone ... from exercising a lawful profession, trade or business” is “null and void” unless *85 it complies with “the exceptions as provided in this Section.” In 1995, the Louisiana Legislature amended and re-enacted La. R.S. 23:921(G) (an exception to La. R.S: 23:921(A)) so as to allow an independent contractor, “whose work is performed pursuant to a written contract,” to enter into a non-competition and/or non-solicitation agreement “on the same basis .as if the independent contractor were an employee.” See 1995 La. Acts, No 937, § 1. This same act provided that an employee could agree to a non-competition and/or non-solicitation clause with an employer provided it was “within a specified parish or parishes, municipality or municipalities, nr parts thereof, so long as the .employer carries on a like business therein, not to exceed a period of two years from termination of employment.” Giving the language of this ^statute its generally prevailing meaning, independent contractors were to be treated the same as “employees” for non-competition and non-solicitation purposes. Thus, non-competition or non-solicitation agreement with either an independent contractor or an employee was null and void pursuant to 23:921(A), unless the agreement satisfied' the exception provided in La. R.S. 23:921(C).
In 1999, the Louisiana legislature expanded La. R.S. 23:921(A) by adding a prohibition against forum selection clauses and choice of law clauses. See 1999 La. Acts, No. 58, § l.[11] The amendment provided that:
The provisions of every employment contract or agreement, or provisions thereof, by which any foreign or domestic employer or any other person or entity includes a choice of forum clause or choice of law clause in an employee’s contract of employment or- collective bargaining agreement, or. attempts [1] to enforce either a choice of forum clause and, or choice of law clause in any civil or administrative action involving an employee, shall be null and void except where the choice of forum clause'and, or choice of law clause is expressly, knowingly and voluntarily agreed to arid ratified by the employee after the occurrence of the iricident which is the subject of the civil or administrative action.
Applying the rules of statutory construction, the Louisiana Legislature is presumed to have added the 1999 amendment to subsection (A) (prohibiting forum selection clauses and choice of law clauses in employment contracts or agreements) with full knowledge of existing subsection (C) that allowed independent contractors to enter into non-competition and non-solicitation agreements “on the same basis as if the independent contractor were an employee.” Since employees could not agree to choice of forum or chqice of law clauses in their employment agreements or contracts, neither could independent contractors. Thus, La. R.S. 23:921(A)(1) and (A)(2) apply to independent contractors to the same extent as if they were employees. This interpretation comports with the 12;¡standard of strict construction required of non-competition agreements, the clear wording of La. R.S. 23:921(A) and (C), and does not lead to absurd consequences.
Pursuant to the provisions of La. R.S, 23:921(A)(2) and (C), the choice of Pennsylvania law clause in .the Schaefer NCND Agreement is null and void and contravenes the public policy of this state. Accordingly, the trial court erred in determining that Pennsylvania law, rather than *86 Louisiana law, governed the validity of the Schaefer NCND Agreement. See La. C.C. arts. 3537 and 3540.
Having determined that Louisiana law is applicable, we next turn to the issue of whether the Schaefer NCND Agreement was confected in accordance with Louisiana law. For the same reasons we found that the O’Hara NCND Agreement failed to comply with the statutory requirements set forth in La. R.S. 23:921(C), we likewise find that the Schaefer NCND Agreement failed to comply with La. R.S. 23:921(C). The affidavit of Mr. Schaefer established that he was not assigned to a geographic area, but was assigned to various hospitals, medical centers, and individual surgeons within a hospital or medical practice. The Schaefer NCND Agreement then establishes the no-competition territory for Mr. Schaefer as “the geographic area within a 10-mile radius of each assigned account.” Again, we note that La. R.S. 23:921(C) requires the parish or parishes, municipality or municipalities, or parts thereof, be “specified.” There is no such specification in the Schaefer NCND Agreement nor is the geographic limitation express or clearly discernable; rather, it purports to establish the no-competition territory as a 10-mile radius from each account, without defining the term “account” or otherwise identifying specific ac-coúnts. As such, the non-competition and non-solicitation provisions contained therein are invalid and unenforceable as a matter of law. Accordingly, Mr. Schaefer is entitled to summary judgment in his favor and against Vortex and Globus declaring the Schaefer NCND Agreement unenforceable against him.
| ¡¡R3, Plaintiffs’Ability to Compete
Lastly, in the plaintiffs’ motion for partial summary judgment, they sought judgment declaring that they are free to compete against Vortex and Globus, including but not limited to soliciting any past, present, and future customers of Vortex and Globus without geographical or other limitation. Having already determined herein that the plaintiffs are entitled to summary judgment declaring that the EDA is not enforceable against them, that the O’Hara NCND Agreement is not enforceable against Mr. O’Hara, and that the Schaefer NCND Agreement is not enforceable against Mr. Schaefer, we must conclude, based on our de novo review of the motion for summary judgment, that the plaintiffs are entitled to judgment declaring that they are free to compete against both Glo-bus and Vortex.
CONCLUSION
For all of the foregoing reasons, we grant the supervisory writ application filed by the plaintiffs, Mr. O’Hara and Mr. Schaefer. The trial court erred in determining that the validity of the plaintiffs’ respective NCND Agreements is governed by Pennsylvania law, rather than Louisiana law. Applying Louisiana law to our de novo review of the plaintiffs’ motion for summary judgment, the NCND Agreements executed by the plaintiffs are invalid. Therefore, the plaintiffs’ motion for partial summary judgment is granted and judgment is hereby rendered in their favor and against Vortex and Globus declaring that the EDA between Globus and Vortex is unenforceable against the plaintiffs, the O’Hara NCND Agreement is not enforceable against Mr. O’Hara, that the Schaefer NCND Agreement is not enforceable against Mr. Schaefer, and that the plaintiffs are free to compete against both Glo-bus and Vortex. In addition, the Amended Order of Preliminary Injunction, which was entered in furtherance of the trial court’s erroneous ruling and is clearly contrary to our decision herein, is hereby *87 dissolved in accordance |27with its terms. This matter is remanded to the trial court for further proceedings consistent with the views expressed in this opinion.
All costs incurred in this supervisory writ application are assessed to the defendant, Globus Medical, Inc.
WRIT GRANTED AND MADE PEREMPTORY; PLAINTIFFS’ MOTION FOR PARTIAL SUMMARY JUDGMENT GRANTED; AMENDED ORDER OF PRELIMINARY INJUNCTION DISSOLVED; REMANDED.
CHUTZ, J., concurs in part and dissents in part.
THERIOT, J., concurs.

. Exhibit A lists the T territories, which consist of 33 different parishes in Louisiana and 3 counties in Mississippi.

. In error, the introductory line of the agreement identified Schaefer as "the Company” and Vortex as the "Agent.” The form utilized blanks whereby different parties’ names could be entered into the form agreement. It appears that Schaefer’s name was inadvertently written in the blank referencing the "Company,” when it should have been inserted into the’ blank were the "Agent” was referenced and Vortex’s name was inadvertently written in the blank referencing the "Agent” rather than the blank referencing the "Company.”

. Although Vortex was made a defendant in this suit, it is undisputed that Vortex has not sought to enforce the NCND Agreements against the plaintiffs. Indeed, Mr. Long, the sole member of Vortex, has filed an intervention in this suit seeking similar relief as the plaintiffs against Globus.

. Although' neither a transcript of the trial court’s ruling nor a judgment denying the motion for summary judgment is contained in the record before us, both parties have stated in their briefs to this court that the trial court, in ruling on the motion for summary judgment, determined that Pennsylvania law applied, that the NCND Agreements were enforceable as to the plaintiffs (as independent contractors), and that Pennsylvania law regarding non-competition agreements did not violate or diminish Louisiana's strong public policy concerning non-competition agreements.

. Globus filed an application- for rehearing, which was denied by this Court, on December 11, 2014. See Patrick O’Hara and Wallace Schaefer v. Globus Medical, Inc. and Vortex Spine, LLC, 2014-1436 (La.App. 1st Cir. 12/11/14) (unpublished action).

. See Diamond B Construction Company, Inc. v. City of Plaquemine, 95-1979 (La.App. 1st Cir.4/30/96), 673 So.2d 636, 640 (when a contract is to be interpreted by the court as a matter of law, a motion for summary judgment is a proper procedural vehicle to present the question to the court).

. Furthermore, as previously noted, Vortex has not established any legal basis on which it could seek enforcement of the O’Hara NCND agreement between Mr. O’Hara and Globus.

. In a separate proceeding between Globus and Vortex and Mr. Long, which is currently pending in the United States District Court for the Eastern District of Pennsylvania, Glo-bus obtained an order on September 5, 2014 requiring Vortex and Mr. Long to assign to Globus all of their rights and benefits under the NCND Agreements to Globus. However, the federal district court's order was subsequently vacated by the United States Third, Circuit Court of Appeal. See Globus Medical, Inc. v. Vortex Spine, LLC; James Chapman Long, 2014-3844, 2014-4032 (3rd Cir.4/1/15), 605 Fed.Appx. 126 (not precedential). Hence, it appears that Globus does not in fact have an assignment from Vortex of its rights under the Schaefer NCND Agreement. See La. C.E. art. 202(A).

. As previously noted, contracting parties can make a choice of law that will govern their agreement and that choice will be given effect, except to the extent that the law contravenes the public policy of the state whose law would otherwise be applicable under La. C.C. art. 3537. See La. C.C. art. 3540; THH Properties Ltd. Partnership, 930 So.2d at 1218.

. Vortex has not offered any arguments as to the validity of the choice of law and noncom-petition provisions of the Schaefer NCND Agreement. Since we are undertaking a de novo review of whether Mr. Schaefer was entitled to summary judgment declaring the Schaefer NCND agreement unenforceable by both Vortex and Globus, we will address Glo-bus’s arguments as to the enforceability of those provisions in the Schaefer NCND Agreement. However, we recognize that this presents an unusual circumstance as Globus, who does not have a right to seek enforcement of the Schaefer NCND agreement, is arguing for' its enforceability even though Vortex, who has the right to enforce that agreement, has not sought to enforce it.

. We note that as originally passed, this provision was part of subsection (A); however, pursuant to the statutory revision authority of the Louisiana State Law Institute, subsection (A) was redesignated as paragraphs (A)(1) and (A)(2), such that the amendment to La. R.S. 23:921(A) by 1999 La. Acts, No. 58, § 1, is now set forth in La. R.S. 23:921(A)(2),

. To the extent that O'Hara can be considered an employee of Globus under the plain language of the NCND (an assertion that O’Hara has not argued in brief and that Globus has not confirmed with evidence in response to the motion for summary judgment), I agree with the majority that under La. R.S. 23:921(A)(2), the choice of law provision selecting Pennsylvania law was null and void. I also am constrained by the law of this circuit to agree that under Louisiana law, the lack of specification as to a geographic region to which the NCND agreement was applied rendered the agreement unenforceable under La. R.S. 23:921(C). See Garcia v. Banfield Pet Hosp., Inc., 2009-0466 (La.App. 1st Cir. 1/21/10), 35 So.3d 261, 264, writ denied, 2010-0393 (La.4/30/10), 34 So.3d 299, relying on Medivision, Inc. v. Germer, 617 So.2d 69, 72 (La.App. 4th Cir.), writ denied, 619 So.2d 549 (La.1993) (where employee could not de- , termine at the time of execution the limits of the prohibition, the contract contained a potestative element and in failing to "specify” the proscribed areas violated La. R.S. 23:921); see also Bell v. Rimkus Consulting Group, Inc. of Louisiana, 2007-0996 (La.App. 5th Cir.3/25/08), 983 So.2d 927, 934 (the purpose of requiring that the geographical limitation be specified is to provide an objective measure of the agreement’s validity and for the employee to know and understand the limitations upon the signing of the agreement); accord Aon Risk Services of Louisiana, Inc. v. Ryan, 2001-0614 (La.App. 4th Cir. 1/23/02), 807 So.2d 1058, 1062. Thus, the status of O’Hara's relationship with either Globus or Vortex cannot be considered a material issue of fact precluding summary judgment.